DENNIS JACOBS, Chief Judge:
This case construes certain provisions of the Class Action Fairness Act of 2005 (“CAFA”), Pub.L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28, United States Code). One purpose of CAFA is to provide a federal forum for securities cases that have national impact, without impairing the ability of state courts to decide cases of chiefly local import or cases that concern traditional state regulation of the state’s corporate creatures. CAFA does that by expanding federal diversity jurisdiction, by allowing removal of securities cases of national impact from the state courts, and by conferring appellate jurisdiction to review orders granting or denying motions to remand such removed cases.
This putative class action was commenced in New York State Supreme Court, and was removed to the United States District Court for the Northern District of New York (Mordue, C.J.). The action alleges that officers of an issuer— abetted by the issuer’s auditor — failed to disclose, while marketing certain debt certificates, that the issuer was insolvent. Plaintiffs seek relief under New York’s consumer fraud statute. The main question for this appeal is whether such a claim falls within an exception to CAFA’s grant of original and appellate jurisdiction — for class actions that solely involve claims that “relate [] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security.” 28 U.S.C. § 1332(d)(9)(C); id. § 1453(d)(3). This is a question of first impression in the circuit courts.
Although the matter is not entirely clear given the imperfect wording of the statute, we hold that the present suit does not fall within this exception to CAFA jurisdiction. Consequently, we have authority to accept an appeal from the district court’s order granting plaintiffs’ motion to remand this action to the state court. We elect to grant defendants’ petition for permission to appeal and, on the merits, we reverse the district court’s remand order.
*27 I
Agway, Inc., an agricultural supply and marketing cooperative, sought to raise capital by issuing money market certificates (“Certificates”) — unsecured, fixed-interest debt instruments. Later, Agway suspended sale of the Certificates, and ended its practice of repurchasing them prior to maturity. Agway filed for bankruptcy in September 2002. This is the second litigation brought by these plaintiffs over these Certificates.
The 2008 Lawsuit. Plaintiffs, seeking to represent a class of individuals who purchased the Agway Certificates between September 2000 and September 2002, filed a lawsuit in New York Supreme Court against Agway officers Donald P. Cardar-elli and Peter J. O’Neill, as well as Ag-way’s auditor, PriceWaterhouseCoopers, LLP (“defendants”). That complaint was predicated on the federal securities laws— in particular, § 11(a) of the Securities Act of 1933, 15 U.S.C. § 77k(a)—and it asserted that misrepresentations in Agway’s financial statements fraudulently concealed that Agway was insolvent and could only discharge its previous debt through the issuance of new debt instruments.
Defendants removed the action to the United States District Court for the Northern District of New York. Plaintiffs then amended the complaint to plead essentially the same acts of concealment under New York’s consumer fraud law, which creates a private right of action for victims of “[djeceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service,” N.Y. Gen. Bus. Law § 349(a). See id. § 349(h).
As to the federal securities claim, Judge Mordue granted defendants’ motion to dismiss with prejudice. See Pew v. Cardarelli No. 5:03-cv-742, 2005 WL 3817472, at *7 (N.D.N.Y. Mar.17, 2005). Judge Mor-due declined to exercise supplemental jurisdiction over plaintiffs’ state law claim, dismissing without prejudice. Id. at *16. We affirmed by summary order, ruling that “no reasonable investor could have been misled about the nature and extent of the risks associated with investing in Ag-way Certificates.” Pew v. Cardarelli 164 Fed.Appx. 41, 44 (2d Cir.2006) (summary order).
The 2005 Lawsuit. The present lawsuit, filed in New York Supreme Court, makes essentially the same factual allegations, but seeks relief only under the state consumer fraud statute, N.Y. Gen. Bus. Law § 349. Defendants removed the action to federal court under CAFA, which in some circumstances permits removal of class actions based wholly on state law. Plaintiffs moved to remand the case to state court, arguing that their suit falls within an exception to CAFA’s removal provision for actions “that relate [ ] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security,” and that the district court therefore lacks jurisdiction over it, 28 U.S.C. § 1332(d)(9)(C), and cannot accede to removal, id. § 1453(d)(3). Chief Judge Mordue agreed, and remanded. Estate of Pew v. Cardarelli, No. 5:05-cv-1317, 2006 WL 3524488 (N.D.N.Y. Dec.6, 2006).
Defendants filed the present petition pursuant to 28 U.S.C. § 1453(c), seeking permission to appeal the district court’s remand order. We advised the parties that were we to grant defendants’ motion for leave to appeal, we might also elect to decide the merits simultaneously.
II
CAFA requires that any petition for review of an order granting or denying a motion to remand be made to the court of appeals “not less than 7 days after entry *28 of the order.” 28 U.S.C. § 1458(c)(1) (emphasis added). As the Third Circuit concluded, this is surely a typographical error, because the “uncontested legislative intent behind § 1453(c) was to impose a seven-day deadline for appeals,” not a waiting period. Morgan v. Gay, 466 F.3d 276, 277 (3d Cir.2006) (emphasis added). We join our sister circuits in interpreting the statute to mean “not more than 7 days.” Id.; see also Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir.2006) (reaching same interpretation); Amalg. Transit Union Local 1309 v. Laidlaw Transit Servs., Inc., 435 F.3d 1140, 1146 (9th Cir.2006) (same); Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1093 n. 2 (10th Cir.2005) (same). Defendants’ petition is timely because it was filed on the seventh business day after the entry of the district court’s order.
III
Ordinarily, an order of remand is unappealable. See 28 U.S.C. § 1447(d). Plaintiffs argue that we lack jurisdiction to decide the present appeal because defendants failed to make a timely application to the district court to stay its order of remand. Section 1453 conditions the right of appeal on a timely filing, without mention of a stay. See 28 U.S.C. § 1453(c)(1). We therefore hold that in granting the federal courts of appeals jurisdiction to review remand orders “notwithstanding section 1447(d),” Congress did not require a defendant to seek a stay. Id. § 1453(c)(1).
IV
Plaintiffs contend that we lack appellate jurisdiction to review the order of remand, by virtue of 28 U.S.C. § 1453(d)(3).
As always, we have jurisdiction to determine our jurisdiction. See Kuhali v. Reno, 266 F.3d 93, 100 (2d Cir.2001). Section 1453 provides, in pertinent part:
(b) In general. — A class action may be removed to a district court of the United States ... without regard to whether any defendant is a citizen of the State in which the action is brought ....
(c) Review of remand orders.—
(1) In general. — Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order.
(2) Time period for judgment. — If the court of appeals accepts an appeal under paragraph (1), the court shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed....
(d) Exception. — This section shall not apply to any class action that solely involves—
(3) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security____
As explained in detail infra, § 1453(d)(3) mirrors § 1332(d)(9)(C), which provides an exception to CAFA’s grant of original federal jurisdiction.
Subsection (b) permits defendants (who are New York residents) to remove the action from New York Supreme Court. Subsection (c) gives defendants the right to petition this Court for an appeal of the district court’s remand order. Compare 28 U.S.C. § 1447(d) (“An order remanding a case to the State court from which it was *29 removed is not reviewable on appeal or otherwise.... ”).
The plain language of subsection (d) (“This section shall not apply----” (emphasis added)) limits all of § 1453, including subsection (c), which delineates the scope of our authority to “accept an appeal” from a remand order. Therefore, § 1453(d) limits our jurisdiction to review the district court’s remand order.[1]
Within our bounded appellate jurisdiction we nevertheless retain discretion to decline to hear such appeals. Section 1453(c) provides that “a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand....” 28 U.S.C. § 1453(c)(1) (emphasis added). A sound exercise of discretion will be guided by consideration of the importance and novelty of the issues raised by the case. See, e.g., Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 678 (7th Cir.2006) (exercising discretion to accept an appeal to “address [an] important question” under CAFA). Here, we elect to entertain defendants’ appeal because the question of whether a state-law deceptive practices claim predicated on the sale of a security is removable under CAFA is important and consequential, and a decision of the question will alleviate uncertainty in the district courts.
Lastly, because we grant defendants’ petition for leave to appeal, see infra, we also elect to decide the merits of the appeal simultaneously. This approach finds support in the caselaw, see, e.g., Wallace v. La. Citizens Prop. Ins. Corp., 444 F.3d 697, 701 n. 5 (5th Cir.2006) (“Although this case comes to us as a petition to accept the appeal, the parties sufficiently address the basis for the underlying appeal, thus allowing us to rule on the merits.”), and it is permitted by the Federal Rules of Appellate Procedure, see Fed.R.App. P. 2. Plaintiffs urge us to decide now only the motion for leave to appeal, and decide the merits later. That course would be inefficient because in order to decide whether we have appellate jurisdiction we must construe the same statutory language upon which the district court rested its remand order (and because the parties have already briefed their positions on that virtually identical statute). Moreover, once leave to appeal is granted, the Court has only 60 days to render a decision. See DiTolla v. Doral Dental IPA of N.Y., LLC, 469 F.3d 271, 275 (2d Cir.2006) (“CAFA’s 60-day clock for rendering judgment starts running on the day that the Court’s order granting permission to appeal is filed.”). Rather than spin wheels, we elect to decide the merits of the appeal now.
V
To determine whether the district court properly remanded to state court (and whether we lack appellate jurisdiction under § 1453(c)), we must consider an exception to CAFA’s grant of original federal jurisdiction, for “any class action that solely involves a claim ... that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security.” 28 U.S.C. *30 § 1332(d)(9)(C). If plaintiffs’ state-law consumer fraud claim falls within this exception, the district court lacks jurisdiction and properly remanded the case to state court (and we lack appellate jurisdiction to review that determination).
We first look to the statute’s plain meaning; if the language is unambiguous, we will not look farther. See Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Here, because the imperfect drafting of the statute makes it ambiguous, we read the wording, consider the statutory context, and consult the legislative history. And we conclude that all modes of analysis agree.
CAFA amends the diversity jurisdiction statute by adding § 1332(d), which confers original federal jurisdiction over any class action with minimal diversity (e.g., where at least one plaintiff and one defendant are citizens of different states) and an aggregate amount in controversy of at least $5 million (exclusive of interest and costs). See 28 U.S.C. § 1332(d)(2). However, “to keep purely local matters and issues of particular state concern in the state courts,” Lowery v. Alabama Power Co., 483 F.3d 1184, 1194 (11th Cir.2007), Congress excluded from CAFA’s expanded jurisdiction (inter alia) certain securities-related class actions, described in three subsections (set out in the margin).[2] Subsection (A) of § 1332(d)(9) carves out class actions for which jurisdiction exists elsewhere under federal law, such as under the Securities Litigation Uniform Standards Act (“SLUSA”), i.e., state-law fraud claims in connection with the purchase or sale of securities traded on a national stock exchange, see 15 U.S.C. § 78bb (f); § 77r (b)(1). Subsection (B) of § 1332(d)(9) carves out class actions that are within the states’ purview of corporate law and governance. It is undisputed that the exception to federal jurisdiction in subsection (A) of § 1332(d)(9) is inapplicable here because the Certificates are not traded nationally, nor are they listed on any national securities exchange. Likewise, subsection (B) of § 1332(d)(9) is inapplicable because plaintiffs’ claims do not concern corporate governance.
The bone of contention is subsection (C) of § 1332(d)(9), which carves out any class action
that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 and the regulations issued thereunder).
As explained supra, the same wording is used in § 1453(d)(3), which provides an exception to defendants’ power to remove an action, see 28 U.S.C. § 1453(b), and an exception to our jurisdiction to review a district court’s remand order, see id. § 1453(c). Thus CAFA’s jurisdictional and removal provisions operate in tandem. *31 If there is original jurisdiction for plaintiffs’ underlying claim, we have appellate jurisdiction, we reverse the remand order, and this action remains in federal district court. If the district court lacked jurisdiction over the underlying claim, we would dismiss the appeal for lack of appellate jurisdiction, the remand order would stand, and the action would be consigned to state court. Accordingly, both original and appellate jurisdiction depend on whether plaintiffs’ allegations fall within CAFA’s exception for claims that relate to rights, duties and obligations related to or created by or pursuant to a security.
To aid analysis, it is useful to break down the wording of § 1332(d)(9)(C) and § 1453(d)(3) into numbered phrases as follows:
[i] [Section 1332(d)(2) and section 1453(b) and (c)] shall not apply to any class action that solely involves a claim .... that relates to
[ii] the rights, duties (including fiduciary duties), and obligations
[iii] relating to or created by or pursuant to
[iv] any security----
The sentence as a whole cannot be read to cover any and all claims that relate to any security, because that would afford no meaning to [ii] and [iii], which are evidently terms of limitation. If the limitation is to rights, duties and obligations (those that relate to, are created by or arise pursuant to a security), what are those rights, duties and obligations?
The statute gives clues as to the import of each term. The word “duties” expressly includes “fiduciary duties,” which reinforces the common understanding that duties are owed by persons (whether human or artificial). “Obligations” can be owed by persons or by instruments, but the natural reading of this statutory language is to differentiate obligations from duties by reading obligations to be those created in instruments, such as a certificate of incorporation, an indenture, a note, or some other corporate document. And certain duties and obligations of course “relate to” securities even though they are not rooted in a corporate document but are instead superimposed by a state’s corporation law or common law on the relationships underlying that document. Finally, the “rights” are those of the security-holders (or their trustees or agents) to whom these duties and obligations run. Thus, an instrument that creates an obligation generates a corresponding right in the holder.
Plaintiffs argue (and the dissent essentially agrees) that the term “rights ... relating to ... any security” includes the right to bring any cause of action that relates to a security. But this would defeat any limitation that was intended by the use of the term. Moreover, this interpretation would render superfluous § 1332(d)(9) (A) (excepting class actions “concerning a covered security”) and § 1453(d)(1) (same), because all “covered securities” are (of course) “securities.” See 28 U.S.C. § 1332(d)(9)(C) (excepting suits relating to rights, duties and obligations relating to or created by or pursuant to “any security”).
The Agway Certificates — which the parties agree are “securities” under CAFA— certainly create “obligations,” and therefore corresponding “rights” in the holders. For example, the Certificates create rights in the holders to a rate of interest and to principal repayment at certain dates. But the present suit does not “relate [] to” those rights; rather, it is a state-law consumer fraud action alleging that Agway fraudulently concealed its insolvency when it peddled the Certificates. Claims that “relate [ ] to the rights ... and obligations” “created by or pursuant to” a *32 security must be claims grounded in the terms of the security itself, the kind of claims that might arise where the interest rate was pegged to a rate set by a bank that later merges into another bank, or where a bond series is discontinued, or where a failure to negotiate replacement credit results in a default on principal. The present claim — that a debt security was fraudulently marketed by an insolvent enterprise — does not enforce the rights of the Certificate holders as holders, and therefore it does not fall within § 1332(d)(9)(C) and § 1453(d)(3).
Our interpretation arguably renders the words “relating to” superfluous. But forced as we are to construe “CAFA’s cryptic text,” Lowery, 483 F.3d at 1187, we prefer an interpretation that preserves the meaning of an entire subsection. In any event, the words “relating to” are repetitive and lack any predictable or precise effect. See 28 U.S.C. § 1332(d)(9)(C) (excepting from federal jurisdiction any class action solely involving a claim “that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security”) (emphases added).
“Interpretation of a word or phrase depends upon reading the whole statutory text [and] considering the purpose and context of the statute....” Dolan v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). Review of SLUSA and CAFA confirms an overall design to assure that the federal courts are available for all securities cases that have national impact (including those that involve securities traded on national exchanges), without impairing the ability of state courts to decide cases of chiefly local import or that concern traditional state regulation of the state’s corporate creatures:
• Thus, although SLUSA bars state-law class actions from all courts if the class alleges a fraudulent statement or omission or manipulative device in connection with the purchase or sale of a security traded on a national exchange, see 15 U.S.C. § 77p(b), it carves out an exception for actions that are based on the law of the state in which the issuer is incorporated or organized and that concern transactions with or communications to persons who already hold the securities of the issuer, see id. § 77p (d)(1)(A)-(B), thereby creating concurrent jurisdiction in cases that are likely to have both national and local impact.
• CAFA’s amendments to the diversity statute- — -including its exceptions — proceed along similar lines, granting federal courts jurisdiction over all class actions (with regard to securities and otherwise) over $5 million in the aggregate if the class members are largely out of state, see 28 U.S.C. § 1332(d)(3), (4). Reading the provisions in context, we infer that diversity jurisdiction is created under CAFA for all large, non-local securities class actions, subject to the three exceptions discussed above.
The legislative history confirms our reading of CAFA. See S.Rep. No. 109-14, at 45 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 42-43. This Circuit has expressed some skepticism as to the “probative value” of the Senate Report because it was issued after CAFA’s enactment (by ten days). Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir.2006). However, as the Eleventh Circuit has pointed out, the Report “was submitted to the Senate on February 3, 200[5]—while that body was [still] considering the bill.” Lowery, 483 F.3d at 1206 n. 50 (emphasis added) (citing 151 Cong. Rec. S909, 978 (daily ed. Feb. 3, 2005)). We therefore think it ap *33 propriate in this case to examine the legislative history of these particularly knotty provisions.
Certain passages from the Senate Judiciary Committee Report speak directly to the issue here:
[T]he Act excepts from ... [its grant to the district courts of original] jurisdiction those class actions that solely involve claims that relate to matters of corporate governance arising out of state law.... By corporate governance litigation, the Committee means only litigation based solely on ... the rights arising out of the terms of the securities issued by business enterprises.
The subsection 1332(d)(9) exemption to new section 1332(d) jurisdiction is also intended to cover disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise, such as a certificate of incorporation or a certificate of designations.
S. Rep. 109-14, at 45 (emphases added). These passages demonstrate that Congress intended that § 1332(d)(9)(C) and § 1453(d)(3) should be reserved for “disputes over the meaning of the terms of a security,” such as how interest rates are to be calculated, and so on. This is entirely consistent with our interpretation of § 1332(d)(9)(C) and § 1453(d)(3) as applying only to suits that seek to enforce the terms of instruments that create and define securities, and to duties imposed on persons who administer securities.
CONCLUSION
For the foregoing reasons, we have appellate jurisdiction to review the district court’s remand order. Furthermore, we grant defendants leave to appeal, reverse the district court’s remand order, and remand the case to the district court for further proceedings.

. It may seem odd that Congress would confine appellate jurisdiction to review a remand order to precisely the same boundaries used to limit the district court’s original jurisdiction; but the § 1453(d) exceptions are not the only exceptions to CAFA’s expansion of federal jurisdiction — and the other exceptions do not purport to double as limitations on appellate jurisdiction. See, e.g., 28 U.S.C. § 1332(d)(5)(A) (excepting from CAFA’s grant of original jurisdiction any class action in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief”).

. Section 1332(d)(9) provides:
Paragraph (2) [granting district courts original jurisdiction over such class actions] shall not apply to any class action that solely involves a claim—
(A) concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p (f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb (f)(5)(E));
(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or
(C)that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).