In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-8013

LINCOLN NATIONAL LIFE INSURANCE CO.,

*Petitioner*,

*v.*

PETER S. BEZICH, individually and on behalf
of a class of others similarly situated,

*Respondent.*

Petition for Permission to
Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 1:09-cv-200-JVB—**Joseph Van Bokkelen**, *Judge.*

SUBMITTED MAY 17, 2010—DECIDED JUNE 25, 2010

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This petition for permission to
appeal arises out of a class action lawsuit that Peter
Bezich is attempting to pursue in the state courts of
Indiana. Bezich's complaint asserts that Lincoln National
Life Insurance Company breached the terms of certain
variable life insurance policies it issued. Each month,
Lincoln deducts cost-of-insurance charges from the ac-

counts of its policyholders; the charges, Bezich contends, are not determined based on expected mortality, as promised by the policy. Lincoln attempted to remove the suit to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1332(d), 1453, but the district court remanded the suit based on CAFA's exception to federal jurisdiction for an action "that solely involves a claim . . . that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder)." *Id.* § 1332(d)(9)(C). In this court, Lincoln would like to challenge the district court's conclusion that § 1332(d)(9)(C) applies. It contends that its petition raises a "novel and important issue" under CAFA: "whether contract claims grounded in the traditional insurance features of variable life insurance policies, as opposed to those related to their security features, qualify under the securities exception to CAFA." Because we agree with the district court that § 1332(d)(9)(C) applies, and this also means that we lack appellate jurisdiction, we dismiss the petition for leave to appeal. See 28 U.S.C. § 1453(d)(3). (We note that Lincoln filed a motion for leave to file a reply to Bezich's opposition to its petition and tendered the proposed reply with that motion. We grant the motion and accept the reply.)

Policyholders like Bezich hold a single variable life insurance policy; under the policy, participants may allocate money between a General Account, which accumulates value from premium payments, and a Separate

Account, an investment account whose value varies depending on the performance of the investments selected. The Separate Account is registered with the Securities and Exchange Commission as a unit investment trust under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 to -64. The cost-of-insurance charges that Bezich is challenging are deducted from the two accounts in proportion to the amount of money allocated to each. A participant is not required to invest in both the Separate Account and the General Account; indeed, it is possible under the policy to place 100% of one's funds in the General Account (though this would be an odd choice for someone who wanted a variable life policy to begin with), 100% in the Separate Account, or to split up the funds as desired. Bezich put all of his money in the Separate Account.

Lincoln urges us to accept this appeal because, it says, no court of appeals has ever considered the application of CAFA to this type of variable life insurance policy. Before we may consider the importance of the question, however, we must decide whether the appeal falls within our jurisdiction. The statute providing for appellate review of district court decisions remanding to state court actions that have been removed under CAFA is 28 U.S.C. § 1453(c), (d); as it happens, the language that it uses is identical to that governing the district court's remand decision in the first instance. Our discussion will thus necessarily touch on the merits of Lincoln's arguments. See *Estate of Pew v. Cardarelli*, 527 F.3d 25, 31 (2d Cir. 2008) (explaining that "both original and appellate jurisdiction depend on whether plaintiffs' allegations fall within CAFA's exception for claims

that relate to rights, duties and obligations related to or created by or pursuant to a security").

The central question is whether the variable life policy is a "security" as defined by section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1). That definition is broad:

> The term "security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

*Id.* In its petition Lincoln contends that the district court erred in concluding that the policy is a "security" under the statute. It points to decisions by this court and others that have noted, in other contexts, the hybrid nature of variable life insurance policies. For example, in *Roth v.*

*American Family Mutual Ins. Co.*, 567 F.3d 884, 886 (7th Cir. 2009), we explained that variable life insurance policies "are both securities and insurance contracts." The question in *Roth,* however, was whether an insurance company was entitled to terminate the contracts of two of its agents. Had the agents been acting as sellers of securities, their conduct would have been governed by an entirely different agency agreement; we found, however, that they were performing insurance services.

Lincoln wants to generalize *Roth*'s willingness to separate the two aspects of the variable policy into its component parts. It relies on *SEC v. United Benefit Life Ins. Co.*, 387 U.S. 202 (1967), in which the Supreme Court rejected the D.C. Circuit's conclusion that a deferred annuity plan, part of which constituted a "security" under the Securities Act of 1933 and part of which involved conventional insurance provisions, had to be characterized in its entirety for purposes of analyzing whether it needed to be registered with the SEC. The Court concluded that because the plan included "[t]wo entirely distinct promises . . . and their operation is separated at a fixed point in time," the proper method was to divide the annuity plan into its component parts and examine the risk allocation in each part. *Id.* at 207-09.

We find Lincoln's reliance on *United Benefit* mistaken, for several reasons. First, it is too far removed from the CAFA definition we have set out above. For CAFA purposes, we are specifically told to look to the definition of a "security" in § 2(a)(1), and from that definition we see that a "security" includes an interest in some-

thing that gives the holder the right to purchase a security. Every holder of Lincoln's variable life policies enjoys such a right. As the company emphasizes, someone who at one point has put all of his money in the General Account may shift funds to the Separate Account at will. Many—perhaps most—of the class members already have at least some of their money in the Separate Account, and Lincoln appears to concede that those people hold a "security" for CAFA (and 1933 Act) purposes.

Our understanding of these financial products is consistent with that of the Eleventh Circuit, as reflected in its opinion in *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252 (11th Cir. 2003). In *Herndon,* the Eleventh Circuit held that a variable life insurance policy is a "covered security" under the Securities Litigation Uniform Standards Act of 1998 (SLUSA). Although several circuits had determined that variable *annuities* are covered securities under SLUSA, the defendant in *Herndon* maintained that the life insurance element of a variable life insurance policy makes that product distinct. *Id.* at 1254. Rejecting that argument, the court of appeals concluded that the life insurance component of the policy did not negate the fact that SLUSA's requirements had been met regarding the annuity component. *Id.*

We are aware that in *Ring v. AXA Financial, Inc.*, 483 F.3d 95 (2d Cir. 2007), the Second Circuit held that a children's term insurance rider attached to a variable life insurance policy was not a "covered security" under SLUSA. In its analysis the court "disaggregate[d] [the]

separate promises" contained in the rider and the policy to conclude that, although the rider was covered by the same contract as the policy, which *was* a covered security, the rider itself was not such a security. *Id.* at 100-01. The defendants argued that *Herndon* counseled the opposite conclusion, but the Second Circuit explained that *Herndon* involved a single product—a variable life insurance policy—not "two separate products that are the subject of two separate promises." *Id.* at 101 n.4.

The present case is more like *Herndon.* The claims of the members of the class Bezich wants to represent concern a *single* promise—that the cost-of-insurance charge would be determined in part by expected mortality—and that promise applies to both the funds they have presently placed in the Separate Account and those that they have the right to move to the Separate Account. The policy's provision that the charge is taken from *both* the General Account and the Separate Account in proportion to the premiums allocated to each does not alter this. Accordingly, the district court correctly concluded that the Lincoln policy as a whole is a "security" for CAFA purposes and cannot be viewed as two separate contracts, one within the statute and the other outside its coverage.

Lincoln finally argues that the exception to CAFA's jurisdiction found in § 1332(d)(9)(C) (and hence the exception to our appellate jurisdiction) does not apply because Bezich's claim does not *"solely"* involve the rights, duties, and obligations related to a security, as required by the statute. If, as we have found, the

variable life policies as a whole meet the definition of a "security," then this argument cannot succeed. In addition, the district court was persuaded by the argument that the cost-of-insurance charges here are analogous to the interest-rate claim that the Second Circuit addressed in *Estate of Pew*, 527 F.3d at 31-32. That court noted that the certificates at issue in the case before it created rights in the holders to a certain rate of interest and to principal repayment at certain dates. Had the suit challenged the interest rate, then it would have "related" to those rights, and the CAFA exception would have applied. *Id.* Instead, however, the plaintiff was complaining about a species of fraud, based on the failure of officers of the issuer to disclose that the issuer was insolvent at the time it was marketing the certificates. *Id.* The latter claim, the court held, was not one "grounded in the terms of the security itself," *id.* at 32, and thus was not subject to § 1332(d)(9)(C) and § 1453(d)(3).

We conclude that Bezich's claim "relates to the rights, duties, . . . and obligations relating to or created by or pursuant to . . . [a] security," as defined in the 1933 Act, and thus we have no jurisdiction to entertain its petition for review of the district court's order remanding the case to state court.

DISMISSED FOR WANT OF JURISDICTION.

6-25-10