**John B. WILLIAMS, Great Plains Trust Co. of South Dakota, Plaintiffs,**

v.

**WELLS FARGO BANK, NATIONAL ASSOCIATION, Defendant.**

Case No. 13–00512–CV–W–HFS.

United States District Court, W.D. Missouri, Western Division.

Signed March 6, 2014.

Christopher S. Shank, David Lee Heinemann, Stephen J. Moore, Shank & Hamilton, PC, Kansas City, MO, for Plaintiffs.

Christopher C. Grenz, James T. Wicks, Robert M. Thompson, Robert J. Hoffman, Bryan Cave LLP, Kansas City, MO, for Defendant.

## ORDER

HOWARD F. SACHS, District Judge.

In this purported class action that has been removed from state court, plaintiffs, John B. Williams and Great Plains Trust Company of South Dakota "GPSD", have filed a motion for remand. Defendant, Wells Fargo Bank, National Association, opposes the motion. For the reasons stated herein, remand will be granted, although I believe I am compelled to do so by Nineteenth Century Supreme Court decisions that may well be rejected by the current Court, and that I believe should be abrogated.

### Factual and Procedural Background

This case involves alleged misconduct by defendant's corporate predecessors in their respective roles as successor trustees of a bond indenture governing the issuance by Allwaste, Inc. of $30 million in 7.25% convertible subordinated debentures. (Petition: ¶ 1). Allwaste was an industrial services company that provided waste removal and other waste-management services, and was the issuer and obligor of the Allwaste Debentures. (*Id:* ¶ 10). Plaintiff, John B. Williams, was a holder of Allwaste Debentures. (*Id:* ¶ 5). Plaintiff, GPSD, is a corporation organized and existing under the laws of South Dakota. It is the assignee of all rights, title, and interest in claims that Great Plains Trust Company "GPTC," a Kansas corporation, may have asserted against Wells Fargo. (*Id:* ¶ 6).

The debentures were issued pursuant to the Indenture dated June 1, 1998 in which Texas Commerce Trust Company of New York "TCTC–NY" was designated as the trustee under the Indenture. (*Id:* ¶ 11). Because of various name changes and mergers, plaintiffs refer to the merged entities as the JPMorgan Entities and as the original trustee of the debentures. (*Id.*).

### Alleged Misconduct By The JPMorgan Entities As Original Trustee

Plaintiffs allege the original trustee was a subsidiary of the lender and that a conflict of interest could arise between protecting the interests of the debentureholders and in protecting its own financial interests of the lender. (*Id:* ¶ 14). Notwithstanding the potential conflict, and unbeknownst to the debentureholders, the lender allegedly entered into an agency agreement with the original trustee permitting the lender to function as trustee for the debentures and all ministerial and administrative duties were transferred to it. (*Id:* ¶¶ 15–17).

In March of 1997, Allwaste agreed to a merger with a Canadian company named Philip Services Corporation allegedly in violation of section 12.01 of the indenture; but, an event of default was not declared. (*Id:* ¶¶ 18–19). Additional events of default allegedly occurred, but were also not declared. (*Id:* ¶¶ 20–27).

On December 1, 1998, Philip Services and Allwaste defaulted on the interest payment due on the debentures, and in June of 1999, declared bankruptcy, and in the course of the bankruptcy proceedings the debentures were cancelled and the debentureholders were issued replacement securities in the reorganized Philip Services. (*Id:* ¶¶ 34–35). Before distribution of the replacement securities were completed, however, Philip Services declared a second bankruptcy in June of 2003, at which time the replacement securities were cancelled, rendering the debentureholders' investment worthless. (*Id:* ¶ 36).

Plaintiffs allege malfeasance by withholding information about the JPMorgan Entities initial conflict of interest, its indemnification agreement with the JPMorgan Entities, and an upcoming lawsuit. (*Id:* ¶¶ 37–38, 40–41, 43–44). In July of 1999, Jerry Malesovas, a debentureholder, filed suit in Texas state court alleging negligence, breach of contract, breach of fiduciary duty, and fraud against the JPMorgan Entities in the administration of the indenture. (*Id:* ¶ 39). The lawsuit was settled in late 2000, with Malesovas receiving $95,000, a significant portion of his investment in the debentures. (*Id:* ¶ 42).

In September of 2001, Wachovia Bank, N.A. "Wachovia" assumed successor trusteeship under the Indenture. (*Id:* ¶ 7). Through a series of corporate mergers, in March of 2010, the current defendant, Wells Fargo Bank, National Association "Wells Fargo" became successor-in-interest and assumed the liabilities alleged here. (*Id.*).

*Further Procedural History*

On August 25, 2005, plaintiffs Williams and Great Plains Trust Company "GPTC" discovered the alleged misconduct and filed suit in the Circuit Court of Jackson County, Missouri against the JPMorgan Entities. (*Id:* ¶ 46). The suit was certified as a class action, and ultimately resolved in 2012 in a settlement amount of $3.35 million. (*Id.*).

On March 6, 2007, Williams and GPTC filed suit against Wachovia after discovering an alleged failure to report the JPMorgan Entities' conflict of interest, to investigate the conflict of interest and take appropriate action, and failure to inform the debentureholders of the Malesovas lawsuit. (*Id:* ¶ 47). In August of 2007, that lawsuit was dismissed without prejudice pursuant to a Tolling Agreement between the parties. The present dispute was thus preserved as of March 6, 2007. (*Id:* ¶ 48).

On March 26, 2012, GPTC, a Kansas corporation, assigned to GPSD, a South Dakota corporation, all rights, titles, and interest in claims that it could have asserted against Wells Fargo, also a South Dakota corporation, as the successor trustee. (Petition: Exh. 1). On April 5, 2013, Williams and GPSD filed a purported class action against Wells Fargo in the Circuit Court, Jackson County, Missouri at Independence alleging in Count I, aiding and abetting the JPMorgan Entities in the breaches of fiduciary duties; in Count II, breaches of fiduciary duties; in Count III, negligence; and in Count IV, breach of contract.

On May 22, 2013, Wells Fargo removed the action to this court on the following claimed grounds: (1) complete diversity of the parties; (2) original jurisdiction under the Class Action Fairness Act "CAFA" 28

U.S.C. § 1332(d); and (3) that pursuant to 28 U.S.C. § 1452(a), Count I which alleged aiding and abetting by the JPMorgan Entities in the breaches of fiduciary duties is related to a bankruptcy proceeding arising under Title 11.[1] In seeking remand, plaintiffs dispute each removal basis set forth by Wells Fargo. As noted below, only the diversity issue is novel here—similar issues have been dealt with by my colleague, Judge Fenner.

## Discussion

### Standard of Review

 Pursuant to 28 U.S.C. § 1441(a), an action originally filed in state court may be removed to federal court where the federal district court has original jurisdiction over the case. *Williams v. Texas Commerce Trust Company of New York,* 2006 WL 1696681 *3 (W.D.Mo.). A motion to remand functionally challenges the removal of the action to federal court, and if it appears that the case was not properly removed the district court must remand the case to the state court from which it was removed. *Id.; citing,* 28 U.S.C. § 1447(c). This is because federal courts are courts of limited jurisdiction, thus, a federal court must determine its jurisdiction as a threshold matter. *Id.* The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction. *Id.; citing, In re Bus. Men's Assurance Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993).

### Federal Jurisdiction

#### A. Amount In Controversy

██ Diversity jurisdiction under 28 U.S.C. § 1332(a), authorizes federal jurisdiction over cases where the matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states. Based on plaintiffs' contention that the face value of the debentures were $30 million at the time of issuance, and a subsequent letter in which plaintiffs claimed a fair market value loss of $21,164,205.20, Wells Fargo contends that the amount in controversy exceeds $75,000. (Notice of Removal: ¶ 23). Plaintiffs state that the jurisdictional threshold is not met because their claims cannot be aggregated.

██ The general rule is that individual class members' distinct claims for actual damages may not be aggregated to satisfy the amount in controversy requirement for diversity jurisdiction. *Kessler v. National Enterprises, Inc.,* 347 F.3d 1076, 1078 (8th Cir.2003); *citing, Crawford v. F. Hoffman–La Roche Ltd.,* 267 F.3d 760, 765 (8th Cir.2001). But, if one class member's claim exceeds the amount in controversy, a district court can exercise supplemental jurisdiction of class members who do not, themselves, satisfy the jurisdictional requirement. *Heckemeyer v. NRT Missouri, LLC,* 2013 WL 2250429 (E.D.Mo.); *citing, Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 549, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

Wells Fargo argues that aggregation of plaintiffs' claims is proper under the present circumstances where the plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. (Opposing Suggestions: pg. 8). In reliance on *Broenen v. Beaunit Corporation,* 305 F.Supp. 688 (E.D.Wis.1969), Wells Fargo contends that where trust indentures contain limitation on suit provisions aggregation of claims has been upheld. The provision Wells Fargo refers to

---

1. The bankruptcy proceeding referred to is *In Re Philip Services (Delaware), Inc.,* No. 99–02385, in the United States Bankruptcy Court for the District of Delaware. (Notice of Removal: ¶¶ 35–36).

at bar is entitled *Section 7.04 Limitation on Suits by Holders of Debentures,* and provides in relevant part that:

> No holder of any Debenture shall have any right by virtue or by availing of any provision of this Indenture to institute any action, suit or proceeding at law or in equity or in bankruptcy or otherwise, upon or under or with respect to this indenture, or for the appointment of a receiver or trustee or similar official, or, for any other remedy hereunder, unless such holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the holders of not less than 25 percent in aggregate principal amount of the Debentures then outstanding shall have made written request to the Trust to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred ....... (Opposing Suggestions: Exh. B, pg. 51).

Courts have routinely enforced these no-action clauses to bar shareholders from bringing lawsuits, and these clauses have been enforced when they would require the trustee to sue one of the other managers of the trust that the trustee is required to supervise. *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.,* 934 F.Supp.2d 516, 531 (E.D.N.Y.2013); *citing, Cruden v. Bank of N.Y.,* 957 F.2d 961, 968 (2nd Cir. 1992). However, such clauses have not been enforced when as here they result in the absurdity of asking the trustee to sue itself. *Cruden,* at 968. Because here, plaintiffs have filed suit against Wells Fargo as the successor indenture trustee, and not as against Allwaste as the initial issuer, the no-action clause relied on by Wells Fargo is not supportive of its contention that plaintiffs' claims in the aggregate are sufficient to exceed the jurisdictional threshold.

Defendant does not assert that any debenture-holder has a claim exceeding $75,000, but may still be free to make such an assertion. Thus, while my rejection of aggregation may be fatal to diversity jurisdiction, I find it unnecessary to rest remand on that issue.

## B. *Diversity Of Citizenship*

 The principle new issue in this case is whether there is complete diversity between the parties. Diversity jurisdiction requires complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship. *Cascades Development of Minnesota, LLC v. National Specialty Insurance,* 675 F.3d 1095, 1098 (8th Cir.2012). However, if the nondiverse plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction. *Id.* A real party in interest is the person who, under governing substantive law, is entitled to enforce the right asserted. *Id.*

### I. *Assignment of Personal Tort Claims*

Wells Fargo claims that GPSD is not a real party in interest because the assignment from GPTC to GPSD was improper and simply designed to defeat diversity. Notwithstanding the choice-of-law provision cited in the Assignment noting South Dakota law, Wells Fargo contends that the clause is unenforceable under Missouri law because it violates Missouri public policy. Wells Fargo disputes the validity of the assignment and contends that under Missouri law a choice-of-law provision (South Dakota law, as noted in the Assignment) is unenforceable if it violates public policy, and further claims that public policy in Missouri prohibits assignment of personal

tort claims as alleged here. Wells Fargo relies on *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 673 (Mo.App.2008) (in Missouri public policy prohibits the assignment of personal tort claims); and *Freeman v. Basso*, 128 S.W.3d 138, 142–43 (Mo.App.2004) (public policy prohibits assignment of claims for legal malpractice and breach of fiduciary duty).

While I am doubtful of the defense stated, it deals with the merits of the litigation and should properly be ruled on remand.

Wells Fargo further argues that because, as previously contended, only the claim for breach of contract could be validly assigned, the assignment was partial. As noted above, Missouri cases have prohibited the assignment of personal tort claims as against public policy. However, Wells Fargo has not presented a Missouri case where claims for breach of fiduciary duty, outside of a legal malpractice action, constitute nonassignable personal torts. Thus, removal is not supported on a theory that only part of the case could be removed.

## II. *Status of South Dakota Plaintiff*

Wells Fargo next contends that the assignment is invalid because GPSD is a nominal party or otherwise inappropriate and must be dismissed from this action. Wells Fargo contends that the assignment was made solely to defeat jurisdiction, and cites *Slater v. Republic–Vanguard Ins. Co.*, 650 F.3d 1132 (8th Cir.2011), in support of its argument that as a nominal nondiverse party, GPSD's presence should be ignored. The facts in *Slater* are wholly different because there was a complete assignment by the nondiverse plaintiff, i.e. LCI Equipments, Inc., to the diverse

plaintiff (Slater) of the right to commence and control the lawsuit, and to receive whatever may be recovered on the claims asserted. *Slater*, at 1135. The court also noted that even in cases before other courts where partial assignments of larger retained interests than the $100 there under consideration occurred, the nondiverse assignee was disregarded. *Id.*[2] Moreover, contrary to Wells Fargo's contention that the assignment at bar was partial because any recovery received would ultimately be shared with the debenture-holders, the court in *Slater* found that where, as here, the assignment granted to GPSD all rights, title and interest in any and all actions, claims and proceedings that GPTC may have asserted against Wells Fargo, it is a complete assignment. *Slater*, at 1135 (this was a complete assignment of the right to commence and control this lawsuit and to receive whatever may be recovered on the claims asserted). Even though GPTC as the assignor retains an interest in the claims for damages whereby GSPD as assignee would collect the proceeds with an obligation to turn them over to GPTC, GPSD is not considered a nominal party and its citizenship would be controlling. *Rosecrans v. Lozier*, 142 F.2d 118, 124 (8th Cir.1944) (even under such circumstances where the assignor retained an interest in the claim for damages, the plaintiff would at least be a trustee in the sense that he could collect while still being obligated to turning over the proceeds to the assignor; and under such circumstances, the assignee's citizenship would be controlling).

In consideration of this issue as it relates to standing, the Court in *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 128 S.Ct. 2531,

2. *See, Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 599 (9th Cir.1996) (nondiverse assignee with a 12% contingent fee interest); *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181, 182, 186 (5th Cir.1990) (2% interest assigned to nondiverse assignee; diverse assignor retained 98% interest and control of the litigation). *Slater*, at 1135.

171 L.Ed.2d 424 (2008), held that a plaintiff, acting as an assignee for collection, had dominion over the claim for purposes of suit because the assignment purported to sell, assign, transfer and set over the chose in action to the assignee. *Sprint,* 554 U.S., at 284, 128 S.Ct. 2531; *citing, Titus v. Wallick,* 306 U.S. 282, 289, 59 S.Ct. 557, 83 L.Ed. 653 (1939). The Court in *Sprint* further ruled that the assignment's legal effect was not curtailed by the recital that the assignment was for purposes of suit and that its proceeds were to be turned over or accounted for to another. *Id.* The Court noted that more recent authority showed that an assignee for collection may properly sue on the assigned claim in federal court because an assignee with legal title is considered to be a real party in interest even though the assignee must account to the assignor for whatever is recovered in the action. *Sprint,* 554 U.S., at 284–85, 128 S.Ct. 2531; *citing,* 6A Wright & Miller § 1545, at 346–348.

Nonetheless, Wells Fargo argues that where the assignor is required to share the recovery the assignment is partial and the district court is bound to make inquiry to determine whether the assignment is of a collusive nature. Although this circuit has not recently addressed the question, some decades ago the Eighth Circuit held that even if assignment of the claims was made to defeat diversity jurisdiction the assignment remains valid under Missouri law. *Rosecrans v. Lozier, supra,* 142 F.2d at 124. The *Rosecrans* court concluded that the motive prompting the assignment is not material and an assignment of a cause of action to the plaintiff, a citizen of the same state as the defendant, even though it be for the purpose of giving the state court exclusive jurisdiction, will not render the cause removable on the ground of diversity of citizenship. *Id.,* at 124–25; *see also, Cascades,* 675 F.3d at 1099; *citing, Lansing v. Concrete Design Specialties,*

*Inc.,* 2006 WL 1229638 *6 (Minn.Ct.App.); *quoting,* Restatement (Second) of Contracts § 332 (1981).

A plaintiff's assignment of the total amount of his claim to a resident of the same state as that of the defendant in the action has often been held to have effectively prevented the defendant from removing that action from state court to a Federal District Court on grounds of diversity of citizenship, notwithstanding the assignment was made for the purpose of preventing such removal. 8 A.L.R. Fed. 845. *See, e.g., Gulf Hydrogen and Energy, Inc. v. Eastman Chemical Co.,* 2013 WL 5945671 (S.D.Tex.); *Charles Schwab Corp. v. Banc of America Securities LLC,* 2011 WL 864978 (N.D.Cal.); *Plush Lounge Las Vegas, LLC v. Lalji,* 2010 WL 5094238 (C.D.Cal.).

As noted above, *Rosecrans* may be the most recent Eighth Circuit case so ruling. It is factually pertinent because it involves a trustee, not the ultimate beneficiaries (who were not parties). A string of early United States Supreme Court rulings establishes this principle. *See* citations in *Attorneys Trust v. Videotape Computer Products, Inc., supra,* 93 F.3d at 598–9. The first such case so holding seems to be *Provident Sav. Life Assur. Soc'y v. Ford,* 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261 (1885). Doubts about the "continuing validity" of the underlying rationale have been expressed in other appellate cases, and several Supreme Court decisions (including *Sprint* and *Kramer*) suggest that the modern Court may not wish to endorse the rule against examination of motives for making an assignment to a body that shares citizenship with a defendant. I join those reservations, partly because so-called fraudulent joinder is routinely examined by district courts, and manipulative assignments seem similar in purpose, similar in analysis, and not unduly burdensome

to litigate. While some courts have riddled the *Provident Savings* rule with various exceptions I favor candid reconsideration. But only the United States Supreme Court would appropriately reject such binding authority, no matter how dated and unpersuasive.

Both GPSD and Wells Fargo are citizens of South Dakota, which thus defeats diversity of citizenship.

## C. Securities Exception to CAFA

■ On February 19, 2005, CAFA was signed into law to establish original subject matter jurisdiction in federal court over most class actions. *Williams v. Texas Commerce Trust Company of New York*, 2006 WL 1696681 *3 (W.D.Mo.); *citing*, 28 U.S.C. § 1332, as amended. 28 U.S.C. § 1453, was amended to generally allow the removal from state court of class actions in which the class consists of more than 100 purported members, the matter in controversy exceeds $5 million, and any member of the class is diverse from any defendant. *Id.* Although the overarching goal of CAFA was to greatly expand federal jurisdiction over most class actions, Congress included certain exceptions to the general provisions. *Id.* One such exception, upon which plaintiff relies, is found pursuant to 28 U.S.C. § 1332(d)(9)(C). In relevant part, this provision excludes from CAFA's grant of original jurisdiction any class actions that solely involve a claim that relates to the rights, duties (including fiduciary duties) and obligations relating to or created by or pursuant to any security. *Id.*

Wells Fargo contends that the securities claims do not meet the criteria for the exception under § 1332(d)(9)(C) because the dispute in this case does not revolve around the meaning of any of the terms of the securities such as how interest rates are to be calculated. In support of its contention Wells Fargo relies on *Estate of Pew v. Cardarelli*, 527 F.3d 25, 33 (2nd Cir.2008) and argues that because in the *Williams* case, Judge Fenner did not have the benefit of the Second Circuit in *Cardarelli*, *Williams* was wrongly decided. In *Williams*, Judge Fenner concluded that the entire action, including allegations for breach of fiduciary duties, breach of contract, negligence, equitable restitution, accounting for profits, imposition of constructive trust, and civil conspiracy, was exempt from CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d)(9)(C).

Most significant is *BlackRock Financial Management Inc. v. Segregated Account of Ambac Assurance Corporation*, 673 F.3d 169, 177 (2nd Cir.2012). After characterizing the claim as one regarding trustee authority, the court determined that it solely related to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security. *Id.*, at 178. Thus, the court dismissed the appeal, reversed the order of the district court with instruction for it to vacate its order denying remand, and to remand the action to state court. *Id.*, at 180.

The district court decision that was reversed in *BlackRock* most clearly resembles the rationale advanced by defendant. *Bank of New York Mellon v. Walnut Place LLC*, 819 F.Supp.2d 354 (S.D.N.Y.2011). A case favorably cited in *BlackRock* reaches the conclusion Judge Fenner did in the earlier litigation that defendant asks me to reject. *Rubin v. Mercer Ins. Group*, 2011 WL 677466 (D.N.J.) (cited in *BlackRock*, *supra*, 673 F.3d at 179). I am reluctant to create conflict with the legal rulings of another judge in this district, and in this case my ruling for plaintiffs on this issue is consistent with the Fenner ruling on

CAFA and favors a remand.[3]

### D. *Federal Bankruptcy–Related Jurisdiction*

■■■ Wells Fargo contends removal was proper under 28 U.S.C. § 1452(a) because plaintiffs' claims are related to a bankruptcy proceeding of Allwaste's corporate parent, Philip Services, *In Re Philip Services (Delaware), Inc.*, No. 99–02385, in the United States Bankruptcy Court for the District of Delaware. (Notice of Removal: ¶¶ 35–36). Specifically, Count 1 which alleged aiding and abetting breach of fiduciary duties. (*Id:* ¶ 36). According to Wells Fargo, because any and all claims against Philip Svcs. were released in the bankruptcy proceeding, any claims alleged against it in its role as successor trustee for aiding and abetting are also released as a matter of law. (*Id:* ¶¶ 37–39).

In relevant part, § 1452(a) provides that a party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title. *Williams*, 2006 WL 1696681, at *6. Pursuant to section 1334(b), federal district courts have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. *Id.* In essence, Wells Fargo contends that because the claim for aiding and abetting alleged here is related to a claim asserted in the bankruptcy court (which resulted in the release of claims asserted against the predecessor trustees), this court has jurisdiction to review this action, under either a core or non-core related to theory, and employ its supplemental jurisdiction to review the claims alleged against

Wells Fargo for breach of fiduciary duty and breach of contract.

■■■ Civil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995). Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Id.* Neither of these circumstances are present in the case at bar.

■■■ Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy. *Id.*, at 774. For subject matter jurisdiction to exist in a *related to* action, there must be some nexus between the civil proceeding and the Title 11 case. *Id.* The test adopted by the Eighth Circuit for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy. *Id.* Under this test Wells Fargo does not present persuasive argument demonstrating any effect an outcome in this matter could have on the bankruptcy proceeding which, as noted by Judge Fenner in *Williams*, was terminated on June 29, 2004, prior to the filing of this action. *Williams*, 2006 WL 1696681, at *6. As in *Specialty Mills* and *Williams*, there is no connection between the matter before me and the bankruptcy proceeding such that this matter would have some effect on the terminated bankruptcy proceeding.

Accordingly, it is hereby

---

**3.** I do note, however, that if defendant wishes to appeal, the practice in *BlackRock* may give it that opportunity.

ORDERED that plaintiffs' motion for remand (ECF doc. 8) is GRANTED. The clerk of the court is directed to REMAND this action to the Circuit Court of Jackson County, Missouri at Independence, no earlier than 30 days from the date of this order. It is further

ORDERED that plaintiff's motion for costs and fees is hereby DENIED. *See, HDNet MMA 2008 LLC v. Zuffa, LLC,* 2008 WL 958067 (N.D.Tex.).