**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 18-276**

---

DOMINION ENERGY, INC.; SEDONA CORP.,

Petitioners,

v.

CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly Situated,

Respondent.

---

**No. 18-310**

---

DOMINION ENERGY, INC.; SEDONA CORP.,

Petitioners,

v.

METZLER ASSET MANAGEMENT GMBH, on behalf of themselves and all
others similarly situated,

Respondent.

---

**No. 18-1844**

---

CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly Situated,

Plaintiff – Appellee,

v.

DOMINION ENERGY, INC.; SEDONA CORP.,

Defendants – Appellants.

No. 18-2066

METZLER ASSET MANAGEMENT GMBH, on behalf of themselves and all others similarly situated,

Plaintiff – Appellee,

v.

DOMINION ENERGY, INC.; SEDONA CORP.,

Defendants – Appellants.

Appeals from the United States District Court for the District of South Carolina, at Columbia.  Margaret B. Seymour, Senior District Judge.  (3:18-cv-00509-MBS; 3:18-cv-00505-MBS)

Argued:  March 19, 2019                                    Decided:  June 28, 2019

Before MOTZ, KING, and THACKER, Circuit Judges.

Petitions for permission to appeal granted and remand orders reversed by published opinion.  Judge King wrote the opinion, in which Judge Thacker joined.  Judge Motz wrote a dissenting opinion.

**ARGUED:** William Walter Wilkins, Jr., NEXSEN PRUET, LLC, Greenville, South Carolina, for Petitioners.  David Todd Wissbroecker, ROBBINS GELLER RUDMAN & DOWD, LLP, San Diego, California; Lawrence P. Eagel, BRAGAR EAGEL &

SQUIRE, P.C., New York, New York, for Respondent. **ON BRIEF:** Burl F. Williams, Andrew A. Mathias, NEXSEN PRUET, LLC, Greenville, South Carolina; Brian E. Pumphrey, Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Petitioners. James M. Morton, MORTON & GETTYS, Rock Hill, South Carolina; Timothy Z. Lacomb, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California; Thomas C. Michaud, VANOVERBEKE, MICHAUD & TIMMONY, P.C., Detroit, Michigan; Mark D. Chappell, Graham S. Newman, CHAPPELL SMITH & ARDEN, P.A., Columbia, South Carolina; Melissa A. Fortunato, BRAGAR EAGEL & SQUIRE, P.C., New York, New York; Deborah Sturman, STURMAN LLC, New York, New York, for Respondent.

————————————

3

KING, Circuit Judge:

The Petitioners in these proceedings — Dominion Energy, Inc., and its subsidiary Sedona Corp. — seek to appeal from two District of South Carolina orders remanding putative class action lawsuits to the South Carolina state courts. *See City of Warren Police & Fire Ret. Sys. v. SCANA Corp.*, No. 3:18-cv-00509 (D.S.C. June 27, 2018), ECF No. 60 (the "Warren Remand Order"); *Metzler Asset Mgmt. GmbH v. Aliff*, No. 3:18-cv-00505 (D.S.C. Aug. 1, 2018), ECF No. 48 (the "Metzler Remand Order"). The Respondents are named plaintiffs in the separate lawsuits — City of Warren Police and Fire Retirement System ("Warren") and the Metzler Asset Management GmbH ("Metzler"). Their class actions, initiated in two circuit courts of South Carolina, arise from a merger agreement between Dominion and SCANA Corporation, a former utility company in which the Respondents were stockholders. Both class action complaints name the Petitioners as two of several defendants and allege that Petitioners aided and abetted a breach of fiduciary duty in negotiating the merger agreement.

The Petitioners removed the class action lawsuits to the District of South Carolina, invoking provisions of the Class Action Fairness Act of 2005 ("CAFA"). By the Warren and Metzler Remand Orders, however, the federal district court returned the lawsuits to their respective state circuit courts, ruling that neither was subject to removal. Pursuant to CAFA, the Petitioners seek appellate review and ask us to reverse the Remand Orders. Because we are satisfied that the class action lawsuits were properly removed from the state courts and should, pursuant to CAFA, be litigated in the District of South Carolina, we grant the petitions for permission to appeal and reverse.

4

I.

A.

These proceedings center on CAFA's jurisdictional provisions. Congress enacted CAFA in 2005 to expand subject matter jurisdiction in the federal courts over "interstate" class actions "of national importance." *See* CAFA, Pub. L. No. 190-2, § 2(b)(2), 119 Stat. 4, 5 (2005); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (describing CAFA's objective).[1] CAFA sought to accomplish that purpose by amending the diversity jurisdiction statute, codified in 28 U.S.C. § 1332. A primary justification for diversity jurisdiction in the federal courts under § 1332 — and for expanding such jurisdiction under CAFA in particular — is the prevention of state court "bias against out-of-State defendants." *See* CAFA, § 2(a)(4)(B), 119 Stat. at 5 (specifying congressional finding that "State and local courts . . . sometimes act[ed] in ways that demonstrate bias against out-of-State defendants" in class action lawsuits); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74 (1938) ("Diversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the state.").

To ensure that interstate class actions of national importance are litigated in a perceived more neutral federal forum, CAFA extended federal jurisdiction to those class action proceedings that satisfy three requirements: (1) the putative class has more than

---

[1] CAFA's provisions are codified in multiple sections of Title 28 of the United States Code. *See, e.g.*, 28 U.S.C. §§ 1332(d); 1453.

100 members (numerosity); (2) the amount in controversy exceeds five million dollars, exclusive of interest and costs (amount in controversy); and (3) the parties are minimally diverse in citizenship (minimal diversity). *See* 28 U.S.C. § 1332(d)(2), (5)(B).[2] When the foregoing three criteria (i.e., numerosity, amount in controversy, and minimal diversity) are satisfied, a defendant sued in a class action in a state court is presumptively entitled to remove the proceedings to federal court. *See* 28 U.S.C. § 1453(b).

Congress, however, has excluded from CAFA's jurisdictional reach three types of class actions, even when such actions otherwise satisfy CAFA's jurisdictional criteria. *See* 28 U.S.C. § 1332(d)(9); *see also Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 704 (4th Cir. 2010) (explaining that § 1332(d)(9) of Title 28 identifies CAFA's three exceptions to federal court jurisdiction). Those same types of class actions are also, of course, excepted from removal to federal court. *See* 28 U.S.C. § 1453(d). CAFA's removal provision — specifying the three excepted types of class actions — provides in full at 28 U.S.C. § 1453(d):

> Exception.—This section shall not apply to any class action that solely involves—
>
> > (1) a claim concerning a covered security as defined under section 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

---

[2] In order for a federal court to properly exercise diversity jurisdiction, Congress has generally required that the parties be completely diverse in citizenship. *See* 28 U.S.C. § 1332(a)(1); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). CAFA's requirement of mere minimal diversity among the parties evinces Congress's intention of broadly expanding diversity jurisdiction for qualifying types of class actions.

6

(2) a claim that relates to the internal affairs or governance of a corporation or other form of business enterprise and arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(3) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

*See* 28 U.S.C. § 1453(d) (footnote omitted). In sequence with their listing, CAFA's removal exceptions are generally called the "covered security" exception, the "internal affairs" exception, and the "securities-related" exception.[3]

Significant to these proceedings, by § 1453(d)'s "solely involves" language, CAFA allows for the removal of a class action that alleges both an excepted claim and an unexcepted claim. Thus, the existence of an unexcepted claim in a class action complaint means that CAFA confers federal court jurisdiction on that class action lawsuit.

B.

In these proceedings, the two underlying putative class actions arise from a 2018 merger between two major utility companies. Petitioner Dominion is a Virginia-based energy utility company that operates in eighteen states, making it "one of the largest energy utility companies in the United States." *See* J.A. 29.[4] On January 3, 2018,

---

[3] The securities-related exception references the definition of a "security" provided in 15 U.S.C. § 77b(a)(1). *See* 28 U.S.C. § 1332(d)(9)(C). As pertinent here, "any . . . stock" is a security. *See* 15 U.S.C. § 77b(a)(1).

[4] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in these proceedings.

7

Dominion announced that it had entered into a merger agreement with SCANA, which was then a South Carolina-based electric and natural gas utility with about 25,000 stockholders. Pursuant to the merger agreement, Dominion's subsidiary, Petitioner Sedona, was to merge with SCANA, and Dominion would then own the business resulting from the merger.

1.

On January 23, 2018, soon after learning of the merger agreement, Respondent Warren — on behalf of itself (as an owner of SCANA common stock), and a class comprised of other such owners — lodged a class action complaint against Petitioners Dominion and Sedona, plus SCANA, SCANA's CEO, and nine members of SCANA's Board of Directors (the "Board Members"). According to the Warren complaint — filed in the Circuit Court of Lexington County, South Carolina — the Board Members decided to "fire-sell" SCANA to Dominion for "an unfair price" after SCANA's stock price "dropped roughly 10%" in late 2017. *See* J.A. 26-27. That decrease in stock price followed SCANA's summer of 2017 announcement that it would abandon a multibillion-dollar project to build two nuclear reactors in South Carolina. The announcement confirmed that SCANA intended to recover the billions of dollars it had spent on the nuclear project from its public utility customers.

The Warren complaint alleges that the merger agreement was "a bad deal for SCANA stockholders," in that those stockholders would receive only a 0.6690 share of Dominion stock in exchange for each share of SCANA common stock. *See* J.A. 27. In contrast, the complaint alleges that the merger would be a financial boon to SCANA's

8

CEO and the Board Members, and also for Dominion.  That is, SCANA's CEO and the Board Members would receive cash for certain of their shares of SCANA stock, along with other benefits not provided to other SCANA stockholders.  And, according to the complaint, Dominion was able to "acquir[e] SCANA at a significant discount to its fair market value." *Id.*

Based on the purported lopsidedness of the merger agreement, the Warren class action complaint alleges two causes of action under South Carolina law:  (1) a claim against SCANA's CEO and the Board Members for breach of fiduciary duty; and (2) a claim against SCANA and the Petitioners for aiding and abetting that breach.[5]  With respect to its aiding and abetting claim, the complaint alleges that SCANA and the Petitioners knew that SCANA's CEO and the Board Members were breaching their fiduciary duties to SCANA stockholders by negotiating and acceding to the terms of the unfair merger agreement.  Additionally, the complaint alleges that SCANA and the Petitioners knowingly participated in the fiduciary breach.  For relief, the complaint requests, inter alia, an injunction against the finalization and consummation of the merger agreement.  Alternatively, because the merger might be completed during the class action

---

[5] Pursuant to South Carolina law, a plaintiff can pursue a common law tort claim for aiding and abetting the breach of a fiduciary duty. *See Bennett v. Carter*, 807 S.E.2d 197, 200 (S.C. 2017); *Moore v. Moore*, 599 S.E.2d 467, 475 (S.C. Ct. App. 2004).  To prevail on such a claim, the plaintiff is obliged to prove three elements:  "(1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages." *See Bennett*, 807 S.E.2d at 200.

9

litigation, the complaint requests an order rescinding any such merger, plus an award of damages.

2.

On February 7, 2018, about two weeks after Respondent Warren filed its class action complaint in Lexington County, Respondent Metzler — on behalf of itself as a SCANA common stock owner and other such owners — filed its class action complaint and thereby opened a second litigation front in the Circuit Court for Richland County, South Carolina. The Metzler complaint names as defendants Petitioners Dominion and Sedona, as well as the Board Members. Like the Warren complaint, the Metzler class action complaint alleges that the Board Members engaged in "a severely flawed sales process and agree[d] to the inadequately priced sale of [SCANA] to Dominion." *See* J.A. 244.

The Metzler complaint also alleges two claims for relief under South Carolina law: (1) a claim against the Board Members for breach of fiduciary duty; and (2) a claim against the Petitioners for aiding and abetting the fiduciary breach. In its aiding and abetting claim, the complaint maintains that the Petitioners knowingly assisted the Board Members in breaching their fiduciary duties to SCANA stockholders. The complaint requests that the state circuit court enjoin the proposed merger. Insofar as the merger might be completed while the litigation is ongoing, Metzler alternatively requests a rescission of any such merger, plus damages.

3.

On February 21, 2018, the Petitioners removed the Warren and Metzler class action lawsuits to the District of South Carolina. The removal filings allege and explain that the lawsuits are both removable under the CAFA provisions codified in 28 U.S.C. §§ 1332(d) and 1453(b). More specifically, the notice of removal in each action alleges that subject matter jurisdiction exists in the District of South Carolina, in that the putative class includes more than 100 members, the claimed damages are at least $600 million, and minimal diversity of citizenship exists between the parties. *See* 28 U.S.C. § 1332(d)(2), (5)(B).[6]

About three weeks later, on March 14, 2018, Warren moved to remand its class action lawsuit to the Circuit Court for Lexington County. Warren did not, however, contest the fact that CAFA's removal requirements of numerosity, amount in controversy, and minimal diversity are satisfied. Instead, Warren maintained that at least one of CAFA's three exceptions to removal bars its class action from being removed to federal court. *See* 28 U.S.C. § 1453(d). By its Warren Remand Order of June 27, 2018, the district court remanded Warren's class action, having concluded that a remand to the Circuit Court for Lexington County was required because "one or all of the exceptions" to removal under CAFA is satisfied. *See* Warren Remand Order 14. In so ruling, the

---

[6] As relevant to the minimal diversity inquiry, the class actions reveal that Warren is a citizen of Michigan, Metzler is a citizen of Germany, Dominion is a citizen of Virginia, and SCANA is a citizen of South Carolina.

district court rejected the Petitioners' contention that Warren's aiding and abetting claim undermines all three CAFA exceptions to removal.

On July 11, 2018, Respondent Metzler moved to remand its class action lawsuit to the Circuit Court for Richland County. Like Respondent Warren, Metzler did not dispute the Petitioners' contention that CAFA's requirements for federal subject matter jurisdiction are satisfied. Metzler similarly maintained, however, that its class action claims fall within at least one of CAFA's exceptions to removal, as specified in 28 U.S.C. § 1453(d). About three weeks thereafter, on August 1, 2018, the district court granted that motion by its Metzler Remand Order, relying on the Warren Remand Order. The court again ruled that "one or all of the exceptions" to removal under CAFA is satisfied. *See* Metzler Remand Order 2. The court therefore remanded the Metzler class action to the Circuit Court for Richland County.

## C.

On July 9, 2018, the Petitioners sought this Court's permission to appeal the Warren Remand Order. *See* 28 U.S.C. § 1453(c)(1) (providing for appeal of order granting or denying motion to remand class action). On August 3, 2018, the Petitioners filed their second petition for permission to appeal, requesting appellate review of the Metzler Remand Order. We consolidated the two petitions for appeal on September 6, 2018, and thereafter received briefing and conducted oral argument.[7]

---

[7] On October 23, 2018, the district court stayed the Warren Remand Order, pending resolution of the Petitioners' effort to appeal to this Court. The court did not, however, stay the Metzler Remand Order.

II.

A.

Before assessing the consolidated petitions for permission to appeal, we will identify and briefly discuss some pertinent legal principles. Generally, a district court's order remanding a removed case to a state court is not appealable. *See* 28 U.S.C. § 1447(d) (providing that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," with limited exceptions); *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 390 n.7 (4th Cir. 2012) (discussing § 1447(d)). Section 1453(c)(1) of Title 28, however, derives from CAFA and authorizes a court of appeals to "accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed." Consistent with § 1453(c)(1), a party is entitled to petition the appropriate court of appeals for permission to appeal a class action remand order. *See BP Am., Inc. v. Okla. ex rel. Edmondson*, 613 F.3d 1029, 1033 (10th Cir. 2010) (describing petition for appeal process for class actions under § 1453(c)(1)).

Although § 1453(c)(1) authorizes a court of appeals to entertain a petition for permission to appeal a remand order in a class action, that provision does not identify any legal standards that govern a decision on the petition. And — notwithstanding that we have previously addressed and resolved petitions for appeal under § 1453(c)(1) — we have yet to specify any relevant factors for deciding such petitions. *See, e.g.*, *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 962 (4th Cir. 2013) (granting petition for permission to appeal under CAFA without specifying standards). The decisions of our sister circuits,

13

however, provide useful guidance. In particular, the First Circuit has adopted a non-exhaustive list of factors for an assessment of petitions for permission to appeal under the CAFA provisions codified at § 1453(c)(1). *See Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 38-39 (1st Cir. 2009). Those factors are derived from decisions of the various courts of appeals and include the following:

(1)     Whether the petition presents an important CAFA-related question;

(2)     Whether the question presented by the CAFA appeal petition is unsettled;

(3)     Whether the district court's jurisdictional decision under CAFA is incorrect, or at least fairly debatable;

(4)     Whether the CAFA-related question is consequential to the resolution of the particular class action;

(5)     Whether that question is likely to evade effective review if left for consideration only after final judgment;

(6)     Whether the CAFA-related question is likely to recur;

(7)     Whether the petition arises from a decision that is sufficiently final to position the class action for intelligent review; and

(8)     Whether the probable harm to the petitioners if an immediate appeal is denied outweighs the probable harm to the other parties should an immediate appeal be entertained.

*See id.* (relying on decisions from Second, Seventh, Tenth, and Eleventh Circuits).

We agree with the courts of appeals that have adopted those factors, though we emphasize that the foregoing list is non-exhaustive. *See Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014); *Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1100 (9th Cir. 2010); *BP Am., Inc.*, 613 F.3d at 1034-35 (10th Cir.); *Coll. of*

14

*Dental Surgeons of P.R.*, 585 F.3d at 38-39 (1st Cir.). Having identified some pertinent legal standards for CAFA petitions for permission to appeal, we turn to the consolidated petitions in these proceedings.

B.

The Petitioners contend that the Warren and Metzler Remand Orders erroneously concluded that "one or all" of CAFA's exceptions to removal is satisfied by the Respondents' claims. *See* Warren Remand Order 14; Metzler Remand Order 2; *see also* 28 U.S.C. § 1453(d) (identifying exceptions to CAFA removal). Although the Petitioners acknowledge that the breach of fiduciary duty claims against SCANA's CEO and the Board Members satisfy at least one of CAFA's exceptions to removal, they maintain that none of the exceptions apply to the class action claims lodged against the Petitioners for aiding and abetting the breach of fiduciary duty. That is, the Petitioners contend that "CAFA provides [federal court] jurisdiction over shareholder class actions that include such aiding and abetting claims." *See* J.A. 194. Because a remand to state court under CAFA is permissible only if all of the class action claims satisfy one of the exceptions to removal, the Petitioners maintain that all of the Respondents' claims must be litigated in federal court. *See* 28 U.S.C. § 1453(d) (providing that class action must "solely involve[]" excepted claims in order to avoid removal to federal court). The Petitioners concede, however, that this Court has never addressed whether aiding and abetting claims — such as those pursued against the Petitioners — fall within CAFA's removal exceptions. In contrast, the Petitioners assert that several district courts have ruled on the issue.

Upon careful consideration, we are satisfied to grant the consolidated petitions for permission to appeal because the relevant factors weigh heavily in favor of a prompt appellate review of the Warren and Metzler Remand Orders. That is, the consolidated petitions present the important and unsettled question of whether a claim for aiding and abetting the breach of a fiduciary duty falls within one or more of CAFA's removal exceptions. In light of the number of district court decisions addressing that question, it seems likely to recur. The Remand Orders are also susceptible to appellate review because no additional factual development is required, and the balance of the harms clearly favors the Petitioners, which "will lose almost any chance of litigating th[eir] case[s] in a federal forum" if they are not permitted to appeal the Remand Orders. *See Coleman*, 627 F.3d at 1101. In these circumstances, the jurisdictional issues are fairly debatable, and we are satisfied to grant the petitions for permission to appeal.[8]

---

[8] After filing its brief in the consolidated appeal proceedings, Warren moved to dismiss as moot the Petitioners' effort to appeal the Warren Remand Order. In its motion to dismiss, Warren explained that the merger between SCANA and the Petitioners closed on January 2, 2019. Because the merger has been completed, Warren represented that it had voluntarily dismissed the Petitioners as defendants in the district court, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Warren argued that the Petitioners' petition for appeal is therefore moot. We are satisfied to deny Warren's motion to dismiss, however, because Warren's actions are contrary to the stay entered by the district court. *See* Fed. R. App. P. 8(a)(1) (authorizing district court to stay proceedings pending appeal); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"); *cf. Doe v. Pub. Citizen*, 749 F.3d 246, 258-59 (4th Cir. 2014) (explaining that, after the filing of a notice of appeal, a federal district court is divested of jurisdiction to rule on matters related to the appeal unless such rulings "aid[] the appellate process").

16

III.

Having granted the consolidated petitions for permission to appeal, we turn to the merits of the Warren and Metzler Remand Orders.[9] We review de novo a district court's determination of whether it "possessed subject matter jurisdiction under CAFA and, thus, whether a remand to state court was appropriate." *See AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 390 (4th Cir. 2012). Under CAFA, the removing party bears the burden of establishing federal jurisdiction over a class action, but the party seeking remand has the burden of proving that one of CAFA's three exceptions to removal applies. *See Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018); *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618-19 (7th Cir. 2012) (explaining that party seeking remand bears burden of proving applicability of CAFA exception). On the merits of the jurisdictional question, the Respondents are thus obliged to prove that each of these class actions should be litigated in the state courts of South Carolina and that each of the Remand Orders should be sustained.

Because the parties agree that the breach of fiduciary duty claims satisfy one aspect of CAFA's exceptions to removal, our analysis focuses solely on the Respondents' claims for aiding and abetting the breach of a fiduciary duty. Put succinctly, if the aiding

---

[9] After granting a petition for permission to appeal, CAFA requires the court of appeals to "complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed." *See* 28 U.S.C. § 1453(c)(2). We render today our decision on the merits of these consolidated appeals, simultaneously with granting the petitions for appeal. *See Estate of Pew v. Cardarelli*, 527 F.3d 25, 29 (2d Cir. 2008) (explaining that court of appeals can concurrently grant petition for appeal and rule on merits thereof).

17

and abetting claims fall within an exception to removal under CAFA, federal court diversity jurisdiction does not exist in these class actions, the removals by the Petitioners were improper, and the Warren and Metzler Remand Orders must be sustained. On the other hand, if none of CAFA's exceptions to removal apply, federal diversity jurisdiction exists in the District of South Carolina, the Remand Orders must be reversed, and the class actions must proceed in the federal court. In defending the Remand Orders, the Respondents argue that the aiding and abetting claims satisfy two of the three exceptions to removal, that is, the internal affairs exception and the securities-related exception.

After careful consideration of the class action complaints, the pertinent CAFA provisions, CAFA's legislative history, and relevant court decisions, we are satisfied that both of these class actions were properly removed to the District of South Carolina and that the Warren and Metzler Remand Orders must be reversed. As explained further below, there are three primary bases for that ruling. First, the Respondents have failed to prove that the aiding and abetting claims fall within the statutory language of any removal exception.[10] Second, we are obliged to construe and apply CAFA's grant of

---

[10] The Respondents argued in their appellate brief that the first CAFA removal exception — that is, the covered security exception — also applies to their aiding and abetting claims. They have since abandoned that contention, by actually conceding otherwise at oral argument. Some of our sister circuits have ruled, however, that — notwithstanding abandonment of an argument that a CAFA exception is satisfied — a reviewing court should nevertheless address each of CAFA's exceptions because they concern subject matter jurisdiction. *See, e.g.*, *Eminence Inv'rs, LLLP v. Bank of N.Y. Mellon*, 782 F.3d 504, 506 (9th Cir. 2015). We therefore explicitly recognize that the covered security exception is inapplicable to the aiding and abetting claims alleged herein. *See Cardarelli*, 527 F.3d at 30 (explaining that the covered security exception (Continued)

federal court jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion. *See Appert*, 673 F.3d at 618-19; *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *see also* S. Rep. No. 109-14, at 43, 45 (2005) (explaining that CAFA's provisions granting federal court jurisdiction "should be read broadly," and that removal exceptions should be "narrowly construed").[11]  Third, the aiding and abetting claims are part and parcel of two interstate and nationally-important class actions, and Congress — in enacting CAFA — plainly intended for such actions to be litigated in the federal courts. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013); S. Rep. No. 109-14, at 43 (emphasizing that "interstate class actions should be heard in a federal court").  We will now explain in some further detail.

A.

The Respondents first contend that their aiding and abetting claims satisfy CAFA's internal affairs exception.  That exception shields from removal to federal court "a claim that relates to the *internal affairs* or governance of a corporation or other form of business enterprise and arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized."  *See* 28 U.S.C. § 1453(d)(2) (emphasis added).  Although CAFA does not anywhere define the phrase

generally applies to "state-law fraud claims in connection with the purchase or sale of securities traded on a national stock exchange").

[11] Both the Supreme Court and our Court have heretofore had occasion to rely on Senate Report No. 109-14, which contains the Senate Judiciary Committee's views with respect to CAFA jurisdiction. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 965 (4th Cir. 2013).

19

"internal affairs," that term has acquired an established legal meaning. Specifically, it describes "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *See LaPlant v. Nw. Mut. Life Ins. Co.*, 701 F.3d 1137, 1140 (7th Cir. 2012) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)); *see also* S. Rep. No. 109-14, at 45 (explaining that CAFA's internal affairs exception "is intended to refer to the internal affairs doctrine defined by the U.S. Supreme Court as matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders" (internal quotation marks omitted)).

Having evaluated the allegations made in the aiding and abetting claims, it is apparent that they fail to satisfy the internal affairs exception. Put succinctly, the aiding and abetting claims are entirely predicated on relationships other than those "among or between" SCANA, its directors, and its stockholders. *See LaPlant*, 701 F.3d at 1140 (quoting *Edgar*, 457 U.S. at 645). The aiding and abetting claims invoke only the relationships of SCANA's CEO and Board Members with the Petitioners — and both Petitioners were outsiders to the internal affairs and governance of SCANA prior to the merger. In order to prove the aiding and abetting claims, the Respondents will be required to ask a finder of fact to look beyond the internal affairs of SCANA prior to the merger, and to assess the conduct of third parties and outsiders with respect to those affairs. As other federal courts have recognized, however, the established understanding of a corporation's "internal affairs" does not include the actions of outsiders such as the Petitioners. *See, e.g.*, *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1350 n.12 (M.D. Fla. 2014); *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018,

20

1036 (N.D. Cal. 2009); *Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998). *But see Schartz v. Parish*, No. 1:16-cv-10736, slip op. at 9 (N.D. Ill. Dec. 14, 2016), ECF No. 18 (ruling that claim for aiding and abetting breach of fiduciary duty satisfied CAFA's internal affairs exception).

Importantly, the Supreme Court has explained that a statutory phrase such as "relates to" — which is contained in the internal affairs exception — is generally "unhelpful" to a reviewing court because a clever person can conjure up "infinite relations" among things. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995); *see also Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 861 (4th Cir. 1998) ("Taken at its face value, the term 'relates to' has no logical boundary. In one way or another, everything relates to everything else." (citation omitted)). Accordingly, when presented with such a phrase, the Court has directed the inferior federal courts to assess and implement the purpose and objective of a statute containing that phrase. *See Maracich v. Spears*, 570 U.S. 48, 59-60 (2013) ("Unless commanded by the text . . . [statutory] exceptions ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design."); *N.Y. State Conference*, 514 U.S. at 656 ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining ['relates to'], and look instead to the objectives of the . . . statute.").

Here, the Respondents contend that the internal affairs exception is satisfied because the aiding and abetting claims generally "relate[] to" the internal affairs of SCANA. That is, Respondents assert that the breach of fiduciary duty claims concern

21

SCANA's internal affairs and that those claims are related to the aiding and abetting claims. We are unpersuaded, however, that the internal affairs exception is entitled to such a boundless reading. Indeed, the Respondents' expansive interpretation of the exception is wholly inconsistent with CAFA's purpose and objective of broad federal jurisdiction with narrowly construed exceptions. *See Appert*, 673 F.3d at 618-19; *Westerfeld*, 621 F.3d at 822; *see also* S. Rep. No. 109-14, at 45. The Respondents' preferred reading of this exception would also undermine CAFA's related objective of ensuring that interstate class action claims of national importance are heard and resolved in the federal courts. Specifically, the aiding and abetting claims involve "one of the largest energy utility companies" in this country (i.e., Dominion), and they potentially impact thousands of former SCANA stockholders and class members across the United States. *See* J.A. 29. In these circumstances, we are satisfied that the aiding and abetting claims do not fall within the compass of the internal affairs exception to removal. That exception thus does not preclude the existence of federal court jurisdiction in these class actions.

## B.

The Respondents also maintain that the securities-related exception to removal applies to their aiding and abetting claims against the Petitioners. According to the Respondents, because the aiding and abetting claims satisfy the securities-related exception, federal jurisdiction does not exist in these class actions. Consequently, the Respondents contend that the removals of these class actions to the District of South

Carolina were improper and that the Remand Orders should be sustained. We again disagree.

## 1.

The securities-related exception provides that a "class action that solely involves . . . a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security" is excepted from removal to federal court. *See* 28 U.S.C. § 1453(d)(3). Although the plain language of that exception may be a difficult read, some decisions of our sister circuits — including a trilogy from the Second Circuit — assist us in determining the ambit of the securities-related exception.

### a.

#### (1)

In 2008, in *Estate of Pew v. Cardarelli* — the Second Circuit's first decision concerning the securities-related exception — the plaintiffs pursued a putative class action in state court against the officers of a business that had issued debt certificates. *See* 527 F.3d 25 (2d Cir. 2008) The complaint alleged that those officers had "failed to disclose, while marketing [the] certificates, that the issuer was insolvent." *Id.* at 26. The plaintiffs sought relief under New York's consumer fraud statute for the fraudulent sale of the debt certificates. *Id.* at 27. Although the defendants removed the class action to federal court under CAFA, the plaintiffs sought and secured a remand order from the district court under the securities-related exception. *Id.*

After granting a petition for appeal, the court of appeals reversed the district court's remand order, ruling that the plaintiffs' consumer fraud claims failed to satisfy the

securities-related exception. *See Cardarelli*, 527 F.3d at 26. The decision explained that the securities-related exception "cannot be read to cover any and all claims that relate to any security" because such an interpretation would render superfluous the limiting language of the exception (i.e., "rights, duties and obligations," and "relating to or created by or pursuant to"). *Id.* at 31. In assessing the securities-related exception, the court speculated, "If the limitation is to rights, duties and obligations (those that relate to, are created by or arise pursuant to a security), what are those rights, duties and obligations?" *Id.* at 31. It then explained:

> The word "duties" [in the securities-related exception] expressly includes "fiduciary duties," which reinforces the common understanding that duties are owed by persons (whether human or artificial). "Obligations" can be owed by persons or by instruments, but the natural reading of this statutory language is to differentiate obligations from duties by reading obligations to be those created in instruments, such as a certificate of incorporation, an indenture, a note, or some other corporate document. And certain duties and obligations of course "relate to" securities even though they are not rooted in a corporate document but are instead superimposed by a state's corporation law or common law on the relationships underlying that document. Finally, the "rights" are those of the security-holders (or their trustees or agents) to whom these duties and obligations run. Thus, an instrument that creates an obligation generates a corresponding right in the holder.

*Id.*

Based on its understandings of the terms "rights," "duties," and "obligations," plus its analysis of CAFA's legislative history, the Second Circuit concluded that the securities-related exception would apply only "to suits that seek to enforce the terms of instruments that create and define securities, and to duties imposed on persons who administer securities." *See Cardarelli*, 527 F.3d at 33. The *Cardarelli* opinion then

24

explained that the plaintiffs' consumer fraud claims did not fall within any of those categories, because the claims sought neither to invoke obligations specified in the terms of the securities (i.e., the debt certificates), nor to enforce any rights granted to the plaintiffs as holders of those securities. *Id.* at 31-32. To the contrary, as the court emphasized, the consumer fraud claims were predicated on an alleged fraud in the plaintiffs' purchases of the securities. *Id.* The court therefore ruled that the securities-related exception did not apply to the plaintiffs' claims and that the defendants had properly removed the class action to federal court. *Id.* at 31-33.

(2)

Two years later, the Second Circuit again considered the securities-related exception in *Greenwich Financial Services Distressed Mortgage Fund 3 LLC v. Countrywide Financial Corp. See* 603 F.3d 23 (2d Cir. 2010). The *Greenwich* plaintiffs had filed a putative class action in state court against several defendants involved in a mortgage business. *Id.* at 25. The defendants had sold pools of mortgages to trusts, and the trusts in turn had sold certificates to the plaintiffs that entitled them to monies collected by the trusts from mortgage payments. *Id.* The class action lawsuit sought a declaratory judgment that — pursuant to the contracts that governed the rights and duties of those involved in the trust transactions — the defendants were required to repurchase certain mortgages from the trusts that did not conform to the terms of those contracts. *Id.* The defendants removed the class action to federal court, which remanded to the state court, relying on the securities-related exception. *Id.* at 25-26.

25

On appeal, the Second Circuit sustained the remand order. More specifically, the court of appeals ruled that the securities-related exception applied to the class action and distinguished its *Cardarelli* decision. *See Greenwich*, 603 F.3d at 29. The decision emphasized that the inquiry under the securities-related exception "focus[es] . . . on the source of the right that the plaintiff's claim seeks to enforce." *Id.* For example, it explained that the class action claims in *Cardarelli* were predicated on "an extrinsic provision of state law" (that is, New York's consumer fraud statute), and therefore those claims were not covered by the securities-related exception. *Id.* On the other hand, the court concluded that the claim in *Greenwich* arose from the terms of the "deal instruments themselves" (that is, the contracts governing the trust transactions) and thus was encompassed by the securities-related exception. *Id.*

(3)

Less than two years after *Greenwich*, the Second Circuit rendered a third decision construing the securities-related exception, called *BlackRock Financial Management Inc. v. Segregated Account of Ambac Assurance Corp. See* 673 F.3d 169 (2d Cir. 2012). There, a bank-trustee initiated a lawsuit in New York state court "to confirm that it had the authority to enter into [a] settlement under the governing trust documents and that entry into the [proposed] settlement [would] not violate its duties under . . . state law." *Id.* at 172. Certain intervenors claiming an interest in the proposed settlement removed the proceedings to federal court under CAFA. *Id.* at 175. The bank-trustee moved for a remand to the New York state court, and the district court denied the motion, ruling that the bank-trustee's lawsuit did not satisfy CAFA's securities-related exception. *Id.* at 175,

26

179. The district court's opinion reasoned that the action relied on an independent source of state law and not on the terms of the governing trust documents. *Id.* at 179.

The Second Circuit reversed the district court and ruled that the bank-trustee's lawsuit fell within the securities-related exception. *See BlackRock*, 673 F.3d at 178-79. As the court of appeals explained, the bank-trustee was seeking "an instruction from [a] court as to whether it ha[d] complied with its 'duties . . . and obligations' arising from the [trust documents] and its 'fiduciary duties' superimposed by state law." *Id.* at 178. Importantly, the *BlackRock* decision determined that "duties superimposed by state law as a result of the relationship created by or underlying [a] security fall within the plain meaning of the [exception], which expressly references 'duties (including fiduciary duties).'" *Id.* at 179. Because the bank-trustee's lawsuit relied on duties that were superimposed by New York law as a result of the underlying trust documents, the court of appeals ruled that the lawsuit satisfied the securities-related exception and that the remand to the state court was proper. *Id.* at 179-80.

b.

In addition to the Second Circuit's decisions on the topic, the Seventh and Ninth Circuits have rendered decisions addressing the securities-related exception. Those courts have considered — and substantially agreed with — the Second Circuit's assessments. *See Eminence Inv'rs, LLLP v. Bank of N.Y. Mellon*, 782 F.3d 504, 508-10 (9th Cir. 2015); *Appert*, 673 F.3d at 620-21 (7th Cir.). As pertinent here, the Seventh Circuit in *Appert* agreed with the Second Circuit's ruling in *Cardarelli* that a claim "merely relat[ing] to a security" does not fall within the securities-related exception. *See*

27

*Appert*, 673 F.3d at 621. And, in *Eminence*, the Ninth Circuit agreed with the Second Circuit's conclusion in *BlackRock* that the securities-related exception applies to a claim predicated on the "duties superimposed by state law as a result of the relationship created by or underlying [a security]." *See Eminence*, 782 F.3d at 510 (quoting *BlackRock*, 673 F.3d at 179).

c.

Having reviewed and assessed the aforementioned decisions of our sister circuits on the securities-related exception, we can identify some guiding principles. Those include the following:

- As the *Cardarelli* decision explains, the securities-related exception does not apply to "any and all claims that relate to any security," *see* 527 F.3d at 31;

- *Cardarelli* further reveals that the securities-related exception does apply, however, "to suits that seek to enforce the terms of instruments that create and define securities, and to duties imposed on persons who administer securities," *id.* at 33; and

- Generally, a claim based on "an extrinsic provision of state law" is not within the securities-related exception, *see Greenwich*, 603 F.3d at 29, but the exception does encompass a claim predicated on the "duties superimposed by state law *as a result of the relationship created by or underlying [a] security*," *see BlackRock*, 673 F.3d at 179 (emphasis added).

2.

With the limitations of the securities-related exception somewhat understood, we turn to its applicability to these class actions. In making that assessment, we must decide whether the Respondents have satisfied their burden of proving that the aiding and

28

abetting claims fall within that exception. For several reasons, we are convinced that the Respondents have failed in that endeavor.

We begin with the persuasive logic of the Second Circuit trilogy. Under the reasoning of those decisions, the aiding and abetting claims being pursued in these class actions do not satisfy the securities-related exception. The relevant securities in these proceedings are SCANA stock, and the aiding and abetting claims lodged against the Petitioners seek to invoke fiduciary duties "created by or pursuant to" SCANA stock. *See* 28 U.S.C. § 1453(d)(3). SCANA stock, however, creates only certain relationships and corresponding fiduciary duties between and among the Board Members and SCANA stockholders. *See, e.g.*, 18 C.J.S. *Corporations* § 393 (updated Mar. 2019) (explaining that a "corporation's board of directors and officers owe the stockholders fiduciary duties"). That is, prior to the merger agreement between Dominion and SCANA, SCANA stock did not create a relationship — nor any duties — between the Petitioners (Dominion and its subsidiary Sedona) and SCANA's stockholders. Put simply, the Petitioners were outsiders to all relationships created by SCANA stock prior to the merger, and Dominion's officers owed their fiduciary obligations only to their own shareholders in negotiating the merger agreement.[12] Consequently, the aiding and

---

[12] As a result of these class actions being heard and resolved in federal court, Rule 12(b)(6) of the Federal Rules of Civil Procedure will apply to test the sufficiency of the allegations in the aiding and abetting claims. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016) (explaining that federal courts reviewing state-law claims apply federal procedural law). To defeat a motion to dismiss under that rule, the Respondents will be obliged to demonstrate the plausibility of their aiding and abetting claims under the familiar standard announced in *Bell Atlantic Corp. v. Twombly*, (Continued)

29

abetting claims against the Petitioners are *not* predicated on any duties "created by or pursuant to" SCANA stock. *See* 28 U.S.C. § 1453(d)(3); *see also BlackRock*, 673 F.3d at 179 (explaining that securities-related exception applies to duties created by or underlying security); *Greenwich*, 603 F.3d at 29 (emphasizing that, in order to satisfy the securities-related exception, a claim must "seek[] enforcement of a right that arises from an appropriate instrument").[13]

Two other sound reasons provide additional support for our determination that the aiding and abetting claims in these class actions do not fall within the securities-related exception. First, CAFA's removal exceptions must be narrowly construed, and our application of the securities-related exception to the aiding and abetting claims would run

___

550 U.S. 544, 570 (2007). If these class actions were litigated in separate South Carolina courts, however, the standard for assessing the sufficiency of those aiding and abetting allegations (pursuant to South Carolina's Rule 12(b)(6)) would be different. *See* S.C. R. Civ. P. 12(b)(6) (permitting a defendant in a civil action to pursue a motion asserting that the complaint "fail[s] to state facts sufficient to constitute a cause of action"); *Skydive Myrtle Beach, Inc. v. Horry Cty.*, No. 27867, slip op. 3 (S.C. Mar. 13, 2019) (explaining standard for S.C. R. Civ. P. 12(b)(6) motion). Because the aiding and abetting claims are arguably implausible (that is, they allege merely that the Petitioners obtained a merger deal, during presumptively arms-length negotiations, that was overly favorable to Petitioners' shareholders), it would be entirely unfair — and contrary to CAFA's explicit purpose — to allow those claims to escape the more stringent federal pleading standards.

[13] Although the foregoing application of the securities-related exception might give minimal effect to the exception's "relating to" language, that interpretation is necessary in order to preserve the meaning of § 1453(d), and to adhere to CAFA's purpose and objective. *See Cardarelli*, 527 F.3d at 32; *see also N.Y. State Conference*, 514 U.S. at 656 (explaining that similar statutory phrase is generally "unhelpful," and that courts confronted with such language should assess statute's objective). As the Second Circuit emphasized in *Cardarelli*, reading the phrase "relating to" in a broad fashion would render superfluous the entire covered security exception. *See Cardarelli*, 527 F.3d at 32.

30

directly afoul of that narrow construction. *See Appert*, 673 F.3d at 618-19; *Westerfeld*, 621 F.3d at 822; *see also* S. Rep. No. 109-14, at 45.[14] Second, given the somewhat unhelpful language of the securities-related exception, we are obliged to read and apply it in light of CAFA's purpose and objective. That is, the federal courts are to hear and resolve "interstate" class actions "of national importance." *See* CAFA, Pub. L. No. 190-2, § 2(b)(2), 119 Stat. 4, 5; *see also Standard Fire Ins. Co.*, 568 U.S. at 595 (explaining CAFA's objective); *N.Y. State Conference*, 514 U.S. at 656 (directing courts to assess objective of statute when language is "unhelpful"). As explained heretofore, these class action aiding and abetting claims are undoubtedly interstate claims of national importance. In such circumstances, these claims are precisely the type over which Congress intended the federal courts to exercise CAFA jurisdiction. We therefore conclude that the securities-related exception does not impede the exercise of federal court jurisdiction in these class actions.

---

[14] In support of their position concerning the securities-related exception, the Respondents primarily rely on a district court decision from the Eastern District of Wisconsin. *See* Br. of Respondents 18-22 (citing *Schumel v. Bank Mut. Corp.*, No. 2:17-cv-1240 (E.D. Wis. Oct. 11, 2017), ECF No. 23). The *Schumel* decision ruled that an aiding and abetting claim alleged in those proceedings satisfied the securities-related exception. *See Schumel*, ECF No. 23 at 7. The *Schumel* court recognized, however, that the question was a close one. *See id.* ("The aiding-and-abetting claim . . . sits at the edge of the [securities-related] exception's reach."). Disagreeing with *Schumel*, we are entirely satisfied that — because CAFA was intended to confer broad federal court jurisdiction, and its exceptions to removal must be narrowly construed — any close question has to be resolved in favor of removal to the federal court.

31

C.

At bottom, the Respondents have failed to prove that the aiding and abetting claims fall within any of CAFA's exceptions to removal. As a result, the Petitioners properly removed these class actions to the District of South Carolina, and both Remand Orders must be reversed. The Petitioners are therefore entitled to have the aiding and abetting claims heard and resolved in the federal court rather than in multiple state courts in South Carolina.[15]

IV.

Pursuant to the foregoing, the petitions for permission to appeal are granted, and the Warren and Metzler Remand Orders are reversed. These class actions are therefore remanded for such other and further proceedings in the District of South Carolina as may be appropriate.

*PETITIONS FOR PERMISSION TO APPEAL GRANTED*
*AND REMAND ORDERS REVERSED*

---

[15] Having these class action complaints heard and resolved in the District of South Carolina undermines any "divide-and-conquer" tactics pursued by the Respondents and nullifies the possibility of conflicting state court decisions being rendered on nearly identical claims. Our ruling also comports with a primary justification for federal diversity jurisdiction, and for expanding such jurisdiction under CAFA. It prevents any perceived state court bias against an out-of-state target defendant — such as Petitioner Dominion — in class action lawsuits.

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

I agree with the majority's conclusions that we should grant the petitions for permission to appeal and that the internal affairs exception does not cover Plaintiffs' claims that Dominion and Sedona aided and abetted SCANA's CEO and directors in breaching their fiduciary duties. But I cannot agree with my colleagues' holding that these aiding-and-abetting claims do not qualify under CAFA's securities-related exception. 28 U.S.C. § 1453(d)(3). Because this conclusion elevates policy considerations over clear statutory text, I respectfully dissent.

## I.

CAFA generally grants federal jurisdiction over certain qualifying class actions. But § 1453(d)(3), the securities-related exception, creates a carve-out and provides that "[CAFA] shall not apply to any class action that solely involves . . . a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." At issue here is whether Plaintiffs' aiding-and-abetting breach-of-fiduciary-duty claims against Dominion and Sedona sufficiently "relate[] to" the breach of "rights, duties (including fiduciary duties), and obligations relating to or created by" Plaintiffs' ownership of SCANA stock.

The most natural reading of the securities-related exception is that a state-law claim of aiding and abetting a breach of fiduciary duty "relates to" state-law fiduciary duties "created by" a security. That alone should resolve this case. *See Hurlburt v. Black*, — F.3d —, 2019 WL 2237966, at *5 (4th Cir. May 24, 2019) (en banc)

33

("[W]hen . . . the most natural reading of statutory language supports a particular construction of that language, courts should be wary of adopting an alternative construction."); *see also, e.g.*, *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019) (interpreting statute in accordance with "most natural reading").

If any doubt remained, the longstanding rule against superfluities strongly counsels against the majority's strained interpretation in three ways. *See United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute . . . .") (internal quotation marks omitted). First, the majority's interpretation *sub silentio* reads "relates to" out of the exception, as the facts of this case make plain. As my friends acknowledge, and Dominion concedes, the securities-related exception covers Plaintiffs' *direct* breach-of-fiduciary-duty claims against SCANA's CEO and directors, standing alone. Maj. Op. at 15; Oral Arg. at 11:28–12:26. And South Carolina law provides that to decide the merits of an aiding-and-abetting claim, a court must first ascertain whether a direct breach of fiduciary duty occurred. *Future Grp., II v. Nationsbank*, 478 S.E.2d 45, 50 (S.C. 1996). Thus, any adjudication of Plaintiffs' aiding-and-abetting claim necessarily requires a determination of whether a fiduciary duty was breached in the first place. If there is any claim that "relates to" a breach of fiduciary duty "created by" a security, this surely must be it.

Second, the majority's interpretation renders duplicative the securities-related exception's specific reference to "fiduciary duties . . . created . . . by any security." As my colleagues properly explain, the distinct internal affairs exception, 28 U.S.C. § 1453(d)(2), covers only claims involving conduct by internal actors — not by third

parties and outsiders. *See* Maj. Op. at 20. The internal affairs exception thus already covers all *direct* breach-of-fiduciary-duty claims, as those claims exclusively involve the internal relationships between a corporation, its shareholders, and its current officers and directors. If fiduciary duty claims against outsiders, like the aiding-and-abetting claims raised here, are not properly covered by the securities-related exception as my friends hold, then that exception, too, would only encompass direct breach-of-fiduciary-duty claims. Thus, my colleagues' holding would eliminate any need for the specific reference to "fiduciary duties" in the exception.

Third, the majority appears to conceive of Plaintiffs' aiding-and-abetting claims differently — not as "related to" fiduciary duties, but as a free-standing state-imposed duty. My friends then conclude that this asserted duty is not "created by or pursuant to SCANA stock." *See* Maj. Op. at 29–30 (internal quotation marks omitted). This construction does not just give "minimal effect to" the exception's additional "relating to" language. *See* Maj. Op. at 30 n.13. It reads it out entirely. *See* 28 U.S.C. § 1453(d)(3) (referring to "obligations relating to or created by or pursuant to any security."). Under the majority's rule, the securities-related exception covers only claims arising from rights and duties "created by" a security (direct fiduciary claims) or "pursuant to" it (involving the underlying contractual terms) — not other claims "relating to" it (like Plaintiffs' aiding-and-abetting claims).

Of course, courts must exercise caution lest "unhelpful" phrases like "relates to" and "relating to" render statutes limitless. *See* Maj. Op. at 21. But I do not suggest that we interpret these phrases expansively — only that we give them *some* meaning rather

35

than ignoring them altogether. And if we do so, it seems to me that we can only conclude that an aiding-and-abetting claim that both *arises under* a state's fiduciary duty law and is *necessarily dependent* on a direct breach-of-fiduciary-duty claim clearly qualifies for the securities-related exception under the plain text of the statute. For such claim clearly "relates to . . . fiduciary duties . . . relating to or created by or pursuant to any security." 28 U.S.C. § 1453(d)(3).

## II.

Rather than adopt the most natural reading of the securities-related exception, my colleagues fashion a new rule purportedly derived from the Second Circuit's *Cardarelli* trilogy. I see no need to rely on these cases. Each of them concerns whether certain *non-fiduciary* rights and obligations qualify as "relating to or created by or pursuant to any security" under the securities-related exception. This case, in contrast, concerns whether claims directly relating to "fiduciary duties" (that the exception expressly "includ[es]" within its scope) qualify under the securities-related exception. 28 U.S.C. § 1453(d)(3). But in any event, the majority's analysis of *Cardarelli* and its progeny overlooks critical aspects of these cases and so reaches a result that they do not support.

The Second Circuit first grappled with the securities-related exception in *Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008) (Jacobs, J.). There, a putative class of plaintiffs sought relief against the issuer of debt certificates under a New York consumer fraud statute, alleging that the issuer failed to disclose that it was insolvent. *Id.* at 26–27. The court concluded that the securities-related exception did not apply to the rights and

36

duties created under that statute, and so reversed the district court's remand order. *Id.* at 32–33. Failing to discern any limiting principle for the securities-related exception's use of "relating to," the *Cardarelli* court effectively read that phrase out of the statute. *Id.* at 31–32. Focusing instead on "created by or pursuant to," the court held that "[c]laims that 'relate[] to the rights . . . and obligations' 'created by or pursuant to' a security must be claims grounded in the terms of the security itself." *Id.* (quoting 28 U.S.C. § 1453(d)(3)) (alterations in original). The court believed that the statute's legislative history demonstrated that the securities-related exception was primarily intended "for 'disputes over the meaning of the terms of a security,' such as how interest rates are to be calculated, and so on . . . and to duties imposed on persons who administer securities." *Id.* at 33 (quoting S. Rep. No. 109-14, at 45 (2005)). Finding that the plaintiffs' claims against the issuer were not grounded in "the rights of the Certificate holders as holders," but instead arose entirely under state consumer-protection law, the court determined that the securities-related exception did not apply. *Id.* at 32.

If *Cardarelli* stood alone, the broadest reading of the dicta in that case might support the majority's reasoning. But in two subsequent cases, the Second Circuit rejected such a broad reading of its own precedent.

The Second Circuit initially interpreted and applied *Cardarelli* in *Greenwich Financial Services Distressed Mortgage Fund 3 LLC v. Countrywide Financial Corp.*, 603 F.3d 23 (2d Cir. 2010). In that case, several banks had sold pools of mortgages to trusts pursuant to "pooling and servicing agreements" (PSAs) and the trusts, in turn, had issued and sold debt certificates to the plaintiffs. *Id.* at 25. Critically, the certificate-

holders were *not* parties to the PSAs, and the banks were *not* parties to the debt certificates; in other words, no single instrument governed the relationship between the certificate-holders and the banks. *Id.* The certificate-holders nevertheless brought suit directly against the banks, alleging that the banks had breached the PSAs between the banks and the trusts. *Id.* at 29.

The *Greenwich* court held that the securities-related exception applied. The court read *Cardarelli* as simply establishing that "claims based on rights arising from independent sources of state law" did not fall within the securities-related exception, and that the exception applied only to claims grounded in "the terms of instruments that create and define securities." *Id.* (internal quotation marks omitted). Following these principles, the *Greenwich* court concluded that the securities-related exception *did* apply to the certificate-holders' claims because they were seeking "enforcement of their rights as *holders* rather than as purchasers of securities," and their suit arose "from the deal instruments themselves" taken as a whole. *Id.* The court explained that it was "not relevant" that "the certificate holders [were] not themselves parties to the PSAs," because "[a]s long as a plaintiff's claim seeks enforcement of a right that arises from an appropriate instrument, it falls within the [securities-related] exception . . . regardless of whether the plaintiff is a party to the instrument." *Id.*

Finally, in *BlackRock Financial Management Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169 (2d Cir. 2012) (Jacobs, J.), the Second Circuit interpreted and applied *Cardarelli* once again. *BlackRock* involved the same mortgage

pool trust and certificate arrangement confronted in *Greenwich*.[1]  *Id*. at 173.  But this time, the plaintiff was a trustee seeking a declaration regarding its obligations to certificate-holders under its PSAs with the banks.  *Id.* at 172, 177.  The district court had interpreted *Cardarelli* and *Greenwich* to mean that the securities-related exception applied *only* to claims based on the terms of a security and had thus concluded that the trustee's declaratory action did not qualify, because it additionally relied on an independent source of state law.  *Id.* at 179.

In an opinion by *Cardarelli*'s author, the Second Circuit unanimously rejected this reading of *Cardarelli*.  *Id.*  The court instead focused on *Cardarelli*'s broader pronouncement that "certain duties and obligations of course 'relate to' securities even though they are not rooted in a corporate document but are instead *superimposed by a state's corporation law or common law* on the relationships underlying that document." *Id.* (quoting *Cardarelli*, 527 F.3d at 31) (emphasis added).  Reasoning that such duties superimposed by state law fell within the "plain meaning" of § 1453(d)(3), the court concluded that the trustee's lawsuit fell within the securities-related exception because it was seeking "an instruction from [a] court as to whether it ha[d] complied with its 'duties . . . and obligations' arising from the [trust documents] and its 'fiduciary duties' superimposed by state law." *Id.* at 178 (quoting 28 U.S.C. § 1453(d)(3)).

The majority deduces three principles from this trilogy.  Maj. Op. at 28.  I agree with each of these principles, including my colleagues' apt observation that the

_____

[1] Once again, the certificate-holders were not parties to the PSAs between the banks and the trusts.

securities-related exception "does encompass a claim predicated on the 'duties superimposed by state law as a result of the relationship created by or underlying a security.'" *Id.* (alteration and emphasis omitted) (quoting *BlackRock*, 673 F.3d at 179). But I would add a fourth: the trilogy makes clear that the securities-related exception also encompasses claims involving parties *outside* the internal orbit of a corporation — i.e., beyond the scope of the internal affairs exception — who may not be parties to the underlying contract or instrument. *See Greenwich*, 603 F.3d at 29; *BlackRock*, 673 F.3d at 178.

Relying on an overly literal reading of language from *Cardarelli*, the majority finds it dispositive that "the Petitioners were outsiders to all relationships created by SCANA stock prior to the merger, and Dominion's officers owed their fiduciary obligations only to their own shareholders in negotiating the merger agreement." Maj. Op. at 29. But precisely the same was true in both *Greenwich* and *BlackRock*: the certificate-holders "were outsiders to all relationships created by" the PSAs "prior to" their purchase of the debt certificates, and the banks' officers owed duties under the PSAs "only to" the trusts. Even so, the Second Circuit in both cases — one written by *Cardarelli*'s author — unanimously concluded that the certificate-holders' claims against the banks, non-parties to the debt certificates, were "created by or pursuant to" these certificates, and so fell within the securities-related exception. My colleagues' single-minded focus on the parties to the security overlooks the fact that the *Cardarelli* trilogy "focus[ed] . . . the inquiry" on "the source of the right that the plaintiff's claim [sought] to

40

enforce" — not on any preexisting relationship between the plaintiff and the defendant. *Greenwich*, 603 F.3d at 29.

A proper application of these principles only confirms that the securities-related exception applies to Plaintiffs' aiding-and-abetting claims. As the Second Circuit has explained, and the majority acknowledges, "duties superimposed by state law as a result of the relationship created by or underlying [a] security fall within the plain meaning of the [securities-related exception], which expressly references 'duties (including fiduciary duties).'" *BlackRock*, 673 F.3d at 179. South Carolina law offers security-holders fiduciary rights in relation to the security issuer, and it also protects security-holders from those who would aid and abet violations of those fiduciary rights. *See Nationsbank*, 478 S.E.2d at 50. Thus, under South Carolina law, a security not only imposes obligations on the issuer but also requires others not to interfere with that issuer-shareholder relationship.

To be sure, Plaintiffs' aiding-and-abetting claims arise from their rights as security-holders in combination with state fiduciary law, rather than their rights in combination with a separate contractual agreement (as was the case with the PSAs in *Greenwich* and *BlackRock*). But if the securities-related exception extends to cover state-law claims brought by third parties to a separate contract, it surely covers claims against a third party arising under "state [securities] law as a result of the relationship created by . . . the security" itself. *BlackRock*, 673 F.3d at 179. Again, Plaintiffs' aiding-and-abetting claims are not only *related to* but are necessarily *dependent on* a direct breach-of-fiduciary-duty claim against SCANA's CEO and directors. These claims are a far cry

41

from the wholly distinct consumer protection claims brought by the plaintiffs in *Cardarelli*. 527 F.3d at 33.

Thus, the *Cardarelli* trilogy offers no aid to the majority's strained reading of the statutory text. Plaintiffs' aiding-and-abetting claims sufficiently relate to duties created by securities so as to qualify for the securities-related exception.

III.

All that remains of my colleagues' argument is that CAFA's statutory purpose requires us to read the securities-related exception so narrowly that we *must* exclude Plaintiffs' aiding-and-abetting claims. Of course, we often look to a statute's purpose and object to help us interpret the language of a specific provision. And the Supreme Court has recognized that Congress intended CAFA to confer broad federal jurisdiction over "certain" class actions. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

But courts have long emphasized that Congress legislates with a scalpel, not a meat axe. *See, e.g.*, *McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016). And there is no reason to think Congress sought to confer federal jurisdiction just for the sake of it. Instead, as the Senate Judiciary Committee Report on which the majority relies explains, Congress enacted CAFA specifically to promote fairness and efficiency in the

handling of class actions. *See* S. Rep. No. 109-14, at 51–53.[2] My friends' interpretation profoundly impairs that purpose by encouraging plaintiffs in securities cases to bring inextricably intertwined claims in separate courts.

Moreover, I note that the exceptions to removal that Congress enumerated in § 1453(d) mirror the jurisdictional exceptions laid out in 28 U.S.C. § 1332(d)(9). These exceptions, as well as the other exceptions listed in § 1332(d), feature one element in common: they seek to foster the development of certain areas of state law *in state courts*. *See, e.g.*, 28 U.S.C. § 1332(d)(4)(A) ("local controversy exception"); *id.* § 1332(d)(4)(B) ("home-state exception"); *id.* § 1332(d)(9) ("corporate exception"). Like the local controversy and home-state exceptions, Congress intended the corporate exceptions — embodied in § 1332(d)(9) and § 1453(d) — to provide a federal forum for securities cases "that have national impact (including those that involve securities traded on national exchanges), without impairing the ability of state courts to decide cases of chiefly local import or that concern traditional state regulation." *Cardarelli*, 527 F.3d at 32; *see also, e.g.*, *McGraw*, 646 F.3d at 178 ("CAFA is also sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters."). By nevertheless encroaching upon a quintessential area of traditional state regulation, today's ruling undermines these deeply rooted principles.

---

[2] The majority leans heavily on this committee report, which was issued after CAFA's enactment, to construe § 1453(d)(3) as narrowly as possible. Numerous courts, including this one, have cast doubt on this report's interpretive value. *See, e.g.*, *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 177 (4th Cir. 2011) ("Senate Report 109-14 . . . was issued 10 days *after* CAFA was signed into law, and for that reason alone, it is a questionable source of congressional intent.").

## IV.

Plaintiffs' aiding-and-abetting claims naturally fall within § 1453(d)(3)'s securities-related exception to removal under CAFA. Accordingly, the district court was correct to conclude that federal jurisdiction does not exist over these class actions and that removal by petitioners was improper. Because I would affirm the district court's remand orders, I respectfully dissent.